UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X
ANTHONY G. PETRELLO and CYNTHIA
A. PETRELLO,

                    Plaintiffs,

          - against -

JOHN C. WHITE, JR., WHITE INVESTMENT
REALTY, LP.,

                  Defendants.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

**MEMORANDUM OF DECISION
AND ORDER**
01-CV-3082 (DRH) (MLO)

**A P P E A R A N C E S :**

**BERG & ANDROPHY**
Attorneys for Plaintiffs
230 Park Avenue, Suite 1000
New York, New York 10169
By: David H. Berg, Esq., Gabriel Berg, Esq.

**GREENBERG TRAURIG, LLP**
Attorneys for Defendants
200 Park Avenue
New York, New York 10166
By: Brian S. Cousin, Esq.
    Jonathan E. Goldberg, Esq.

**HURLEY, Senior District Judge:**

*INTRODUCTION*

      This case centers around an August 25, 1998 contract of sale (the "Contract") for 9.56

acres of waterfront property located in the Hamlet of Sagaponeck, in the Town of Southampton,

New York. In a Memorandum and Order dated February 2, 2006, familiarity with which is

presumed, this Court (1) granted Plaintiffs' motion for summary judgment seeking specific

performance of the Contract and dismissal of Defendants' counterclaims for common law fraud,

fraud in the inducement, breach of fiduciary duty, breach of constructive trust, and a declaratory

judgment that the Contract is null and void; (2) denied Defendants' motion for judgment as a matter of law; (3) denied  Defendants leave to amend to add a proposed sixth counterclaim and (4) granted Defendants leave to amend to add their proposed seventh and eighth counterclaims. Presently before the Court are  motions by Plaintiffs Anthony Petrello ("Petrello") and Cynthia Petrello (collectively, "Plaintiffs") to dismiss counterclaims and by Defendants John C. White, Jr. ("White"), and White Investment Limited Partnership  (collectively, "Defendants") to stay, reconsider, and vacate the February 2, 2006 Memorandum and Order.[1]

For the reasons stated below, the Court grants Plaintiffs' motion to dismiss counterclaims, denies Defendants' motion for reconsideration and vacatur of the February 2, 2006 Order, and grants Defendants' motion for a stay pending appeal.

## DISCUSSION

### I.  The Motion to Dismiss the Counterclaims

Plaintiffs have moved to dismiss the seventh and eighth counterclaims.  These counterclaims are premised upon alleged breaches by the Plaintiffs of the settlement agreement entered into between the parties.  Plaintiffs argue that these counterclaims are barred by the doctrine of election of remedies embodied in  New York General Obligations Law § 15-501(3) and cases decided thereunder.  Defendants counter that election of remedies is inapplicable as their request for rescission of the Contract is not inconsistent with their claims under the

---

[1]By letter dated August 11, 2006, Plaintiffs withdrew, without prejudice, their request for partial final judgment pursuant to Rule 54(b) of the Federal Rules of Civil Procedure in the expectation that the Second Circuit would entertain Defendants' appeal pursuant to 28 U.S.C. 1292(a)(1) and advised the Court that it did not oppose the motion for stay pending appeal. Defendants' appeal was withdrawn from active consideration by stipulation dated September 27, 2006.

settlement agreement - whether for specific performance or damages. Continuing, even assuming that the settlement agreement is an executory accord, Defendants maintain they have not made an election because they have not sought to enforce the underlying Contract.

As detailed in this Court's earlier decision, the settlement agreement was entered into during the course of a jury trail of this case before Judge Wexler. Generally, the settlement agreement provides the Contract was rescinded and in its place Plaintiffs were given the right to purchase three acres of the property plus a "buffer" lot and were required to pay $1,815,000.00 in cash at the closing. The settlement was conditioned upon approval of the lot lines by the Town of Southampton within nine months. If approval was not received within that time frame, Plaintiffs had the sole right to extend the time or terminate the agreement. Paragraph 8 of the settlement agreement provides:

> If all the aforesaid approvals have not been finally approved by February 28, 2004, then this agreement shall terminate unless extended by the [Plaintiffs], at their option, for up to one additional year. **If this agreement is thus terminated or the approvals not finally received (free of appeals) then the action shall be restored to this Court's calendar on the application in writing by either party.**

(*See* Defendants' Counterclaimants' Statement of Material Facts Pursuant to Local Civil Rule 56.1 (Docket No. 208.2 ) at ¶ 222 (emphasis added).)

The project documentation was not submitted to the Town of Southampton until the beginning of February, 2004. As a result, the Town did not approve the plans within the nine month time frame. Plaintiffs elected not to extend the term of the settlement agreement.

The suit then returned to this Court. Plaintiffs filed a Motion for Summary Judgment seeking specific performance of the August 25, 1998 Contract of sale. Defendants opposed the

motion arguing for rescission of the Contract or imposition of a constructive trust. Additionally, Defendants thereafter filed a motion seeking (1) judgment as a matter of law as to Plaintiffs' request for specific performance and (2) leave to amend the answer to add counterclaims based on the settlement agreement. In its February 2, 2006 Memorandum and Order, the Court allowed the proposed seventh counterclaim alleging Plaintiffs' breach of the settlement agreement by failing to deliver acceptable subdivision documentation in a timely fashion and allowed the proposed eighth counterclaim alleging a breach of the covenant of good faith and fair dealing with respect to the settlement agreement. Both counterclaims sought compensatory and punitive damages. Neither counterclaim sought specific performance of the settlement agreement.

Section 15-501 of the New York General Obligations Law ("G.O.L.") provides in pertinent part:

> 1. Executory accord as used in this section means an agreement embodying a promise express or implied to accept at some future time a stipulated performance in satisfaction or discharge in whole or in part of any present claim, cause of action, contract, obligation, or lease, or any mortgage or other security interest in personal or real property, and a promise express or implied to render such performance in satisfaction or in discharge of such claim, cause of action, contract, obligation, lease mortgage or security interest.
> . . .
> 3. If an executory accord is not performed according to its terms by one party, the other party shall be entitled either to assert his rights under the claim, cause of action, contract, obligation, lease, mortgage or other security interest which is the subject of the accord, or to assert his right under the accord.

N.Y. Gen. Oblig. Law § 15-501 (McKinney 2001).

"An accord and satisfaction is a method of discharging a contract or settling a claim arising from a contract or a tort by substituting for such contract or claim an agreement for the

satisfaction thereof. . . ." *City of Amsterdam v. Daniel Goldreyer, Ltd.,* 882 F. Supp. 1273, 1279-80 (E.D.N.Y. 1995). As its name suggests, an accord and satisfaction has two components: (1) the accord, which is the agreement that a stipulated performance will be accepted in lieu of an existing claim; and (2) the satisfaction, which is the performance of the substituted agreement. *Denburg v. Parker Chapin Flattau & Klimpl*, 82 N.Y.2d 375, 383-84 (1993) (citations omitted). An accord may be executory in that there is an agreement to perform in the future. *Albee Truck Inc. v. Halpin Fire Equip. Inc.,* 206 A.D.2d 789 (3d Dept. 1994).

An accord and satisfaction must be distinguished from a substituted agreement. As the New York Court of Appeals has explained:

> An accord is an agreement that a stipulated performance will be accepted, in the future, in lieu of an existing claim. . . . Execution of the agreement is a satisfaction. The distinctive feature of an accord and satisfaction is that the obligee does not intend to discharge the existing claim merely upon the making of the accord; what is bargained for is the performance, or satisfaction. If the satisfaction is not tendered, the obligee may sue under the original claim or for breach of the accord. . . .
>
> By contrast, the parties may intend that a new agreement, though executory, will immediately discharge the existing obligation . . . . That is a substituted agreement . . . . Whether a particular arrangement is an accord or a substituted agreement hinges on the parties' intent, determination of which may be aided by certain presumptions. . . .

*Denburg,* 82 N.Y.2d at 383-84 (citations omitted). *See C3 Media & Mktg Gr., LLC v. Firstgate Internet, Inc.,* 419 F. Supp. 2d 419, 434 (S.D.N.Y. 2005) ("Whereas an executory accord extinguished a claimant's prior claims upon performance of the accord, a substitute agreement extinguishes a claimant's prior claims upon execution of the agreement.") (quoting *Frank Felix Assocs. v. Austin Drugs, Inc.,* 111 F.3d 284, 287 n.1 (2d Cir. 1977)).

Whether the parties intend an executory accord or a substituted agreement is ordinarily a question of fact. *Frank Felix Assocs. v. Austin Drugs,* 111 F.3d 284, 287 n.1 (2d Cir. 1997). Where, however, the parties have manifested their intent on the face of the document, a court may determine intent as a matter of law. *Koening Iron Works Inc. v. Sterling Factories Inc.,* 1999 WL 178785, at *8 (S.D.N.Y. 1999); *see also Rainbow v. Swisher*, 72 N.Y.2d 106 (1988) (where contract is clear and unambiguous, the intent of parties must be gleaned from within the four corners of the contract). "Generally, it is assumed that one does not surrender an existing obligation for a promise to perform in the future. It is generally more reasonable to suppose that he bound himself to surrender his old rights only when the new contract of accord was performed." *Albee Truck,* 206 A.D.2d at 790 (internal quotations and citations omitted).

An executory accord may be evidenced by language preserving the claims until performance is tendered. *Denberg*, 82 N.Y.2d at 383; *Koening Iron Works,* 1999 WL 178785, at *7-8. A substitute agreement may be evidenced by language indicating that it supersedes and supplants the previous contract, completely replacing the old contract with the new. *See Sudul v. Computer Outsourcing Servs.,* 917 F. Supp. 1033, 1047-48 (S.D.N.Y. 1996); *Blair & Co. v. Otto V.,* 5 A.D.2d 276, 280 (1st Dept. 1958). "[F]ormalized papers with unequivocal language" tend to indicate a substitute agreement. *Goldbard v. Empire State Mut. Life Ins. Co.,* 5 A.D.2d 230, 234 (1st Dept. 1958).

In this case, the intention of the parties, as objectively manifested, is contained in the settlement agreement itself. By providing "[i]f this agreement is thus terminated or the approvals not finally received (free of appeals) then the action *shall* be restored to this Court's calendar on application," the language of the agreement manifests a clear intention to enter an accord. *Cf.*

*Goldbard,* 5 A.D.2d at 234 (noting that sometimes "the matter of intention can be determined from documents exclusively, in which event the conclusion may be drawn, as a matter of law, by the court"). Clearly, had a substitute agreement been intended, there would be no basis for either party to rely on the superseded August 25, 1998 Contract and to ask for restoration of the action relating to that Contract to the calendar.[2]

Defendants argue that the doctrine of election of remedies "require a party to choose, generally, by the time of trial, between inconsistent rights and remedies" and there is nothing inconsistent in their request for rescission of the Contract and their request for damages or specific performance of the settlement agreement.[3] (Defendants' Mem. of Law in Opp. to Plaintiffs' Motion for Judgment pursuant to FRCP 54(B) and to Dismiss the Seventh and Eighth Counterclaims ("Defendants' Opp'n Mem.") at 11-12.) Defendants' analytical focus on the consistency of remedies is misplaced. Consistency, or the lack thereof, is not the subject of New York General Obligations Law § 15-501. Rather, subsection 3 of the statute makes the remedies of recovering on the accord or on the underlying claim mutually exclusive and requires a timely

---

[2] The Court notes that the parties have had a number of opportunities to claim that the settlement agreement was a substitute agreement, but failed to do so. Such a claim was not raised when Plaintiffs sought to restore the "original" action to the calendar after the settlement agreement was terminated. Nor was it raised on Plaintiffs' motion for summary judgment or Defendants' motion for judgment as a matter of law. Indeed, in its February 2, 2006 Decision, this Court noted that "[n]either party seeks enforcement of the settlement agreement, but rather both parties resumed their initial claims." Memorandum & Order, dated Feb. 2, 2006, at 2. Accordingly, by their conduct, the parties have treated the settlement agreement as an accord and not a substituted agreement.

[3] As noted *supra,* Defendants' counterclaims, relating to the settlement agreement and allowed by the Court's February 2, 2006 Memorandum and Order, seek compensatory and punitive damages based on the alleged breach of the settlement agreement and not specific performance of the settlement agreement.

election between two alternatives. *See Abou-Khadra v. Mahshie,* 4 F.3d 1071, 1079 (2d Cir. 1993) (noting that N.Y. G.O.L. § 15-501.3 requires a litigant to select his remedy, either compensation for breach of the accord or damages on the claims that underlie the accord); *Plant City Steel Corp. v. Nat'l Machinery Exchange Inc.,* 28 A.D.2d 268, 269 (1st Dept. 1969), *aff'd,* 23 N.Y.2d 472 (1969) (where purchaser brought action against seller for rescission of contract based on breach of warranty and the parties agreed to settle action, settlement agreement was an executory accord and upon default by the seller in performance of settlement agreement, purchaser was entitled under N.Y. G.O.L. § 15-501 to either prosecute its original claim of rescission or assert cause of action for breach of settlement agreement.).

Contrary to the argument of Defendants, they need not have sought to enforce the Contract in order to have made their election under § 15-501.  On its face, the language of § 15-501 is broad enough to cover Defendants' claim for rescission of the contract of sale.  *Cf. Plant City Steel Corp.,* 28 A.D.2d at 269 (recognizing applicability of G.O.L.§ 15-501 where original claim was for rescission of contract).  Section 15-501 required Defendants to elect between either their original litigation claims and causes of action or their rights under the settlement agreement.  Defendants' assertion of their original litigation claims in their motion for judgment as a matter of law constituted their election.

The decision in *Rist v. Comi,* 250 A.D.2d 966 (3d Dept. 1998), is instructive.  In *Rist,* the parties had entered into a stock purchase agreement whereby the defendant purchased 100% of the stock of a certain corporation from the plaintiffs with compensation to be paid at a later date. The *Rist* defendant then claimed the agreement was invalid and refused to make payments, leading the plaintiff to file a declaratory judgment action seeking to establish its entitlement to

the stock. The declaratory judgment action was settled by a stipulation that contemplated defendant's repurchase of the stock and the performance of certain acts, all of which were to occur before a date certain. Before the terms of the stipulation were satisfied the defendant filed for bankruptcy. The plaintiff sought and obtained an order directing the return of the stock to it. The *Rist* plaintiff then commenced an action seeking to invoke the benefit of the release of defendant's fraud claims contained in the stipulation. The Appellate Division affirmed the dismissal of the action holding that the parties had repudiated the stipulation of settlement by their conduct. The Court stated:

> Where one party to an executory accord fails to perform its obligations thereunder, the other party may assert his or her rights under the accord or proceed upon the underlying claim. Here, however, plaintiffs chose to proceed by filing an action seeking return of the stock, and thus lost any entitlement they may have had to seek enforcement of the executory accord.

*Id.* at 967. *See also Albee Truck,* 206 A.D.2d 790-791 (where agreement between parties was an executory accord and the accord was not performed according to its terms by one party, the plaintiff was entitled to sue on original claim and defendant's defense thereto of accord and satisfaction failed).

In this case, Defendants' "claims" that were the subject of the accord included a claim that Plaintiffs' contractual claims should be dismissed because the down payment required by the Contract was not made, as well as claims for rescission based on, inter alia, fraud and fraud in the inducement. When performance under the settlement agreement was not forthcoming by the Plaintiffs, Defendants had two options under § 15-501: either sue on the settlement agreement or proceed with the underlying claims - including Defendants' claims they had no obligation to

proceed under the Contract because the downpayment was not made and Defendants' claims for rescission. As this Court noted in its earlier decision, "[n]either party seeks enforcement of the settlement agreement but rather both parties have resumed their initial claims." Memorandum of Decision and Order, dated February 2, 2006, at 2. Defendants never asserted the settlement agreement as a defense to the enforcement of the Contract of sale. By moving for judgment as a matter of law on their original claims, Defendants made their election. *See LeBoeuf, Lamb, Greene & MacRae v. Old Republic Ins. Co.*, 243 A.D.2d 168, 177 (1st Dept. 1998) ("As a matter of statute, a party is permitted to plead inconsistent theories of recovery . . . . However, summary judgment being the procedural equivalent of a trial, a litigant must elect among inconsistent positions upon seeking expedited disposition . . . .") (internal citations omitted); *Unisys Corp. v. Hercules Inc., 224 A.D.2d 365, 367* (1st Dept. 1996) ("Even where a plaintiff may seek recovery on alternative theories, he must make an election of remedies at trial . . . or upon submission of a motion for summary judgment . . . the grant of which is the procedural equivalent of a trial . . . .") (internal quotations and citations omitted); *see also Wilmoth v. Sandor,* 259 A.D.2d 252, 254 (1st Dept. 1999) (no election was made by plaintiff where defendant, and not plaintiff, was the summary judgment movant). Accordingly, the counterclaims are dismissed as barred by N.Y. G.O.L. § 15-501.

## II. The Motion for Reconsideration

Defendants seek reconsideration and vacatur of the Court's February 2, 2006 Memorandum and Order pursuant to Federal Rule of Civil Procedure 59(e) and Local Rule 6.3. They argue 1) the Court failed to consider their clean hands argument; 2) the Court ignored controlling precedent and misconstrued deposition testimony in holding Defendants' reliance

was unreasonable as a matter of law; and 3) the Court should not have granted the Plaintiffs'

Motion for Summary Judgment based on the absence of an explicit request for specific

performance of the settlement agreement.

The February 2, 2006 Memorandum and Order was entered into this Court's electronic

case filing system, and the docket entry made, on February 2, 2006.  The motion for

reconsideration was not served until August 5, 2006 and was filed on September 20, 2006.  As a

preliminary matter, the Plaintiffs have raised the issue of the timeliness of the application.

## A.  Timeliness - Rule 59(e)

Federal Rule of Civil Procedure 59(e) provides that "any motion to alter or amend a

judgment shall be filed no later than 10 days after entry of the judgment."   Whether the ten days

for the filing of the Rule 59(e) motion  begins to run from entry of the February 2, 2006

Memorandum and Order on the Clerk's Docket (i.e., February 2, 2006) or, as Defendants

maintain, 150 days from the entry of the February 2, 2006 Memorandum and Order pursuant to

Rule 58 (i.e., July 2, 2006),[4]  the motion is untimely.  Assuming the correctness of Defendants'

---

[4] Since March 2, 2006, Defendants have taken the position that the February 2, 2006
Memorandum and Order is appealable as of right "in that its award of specific performance and
rejection of defendants' defenses to the award of specific performance function as an injunction
against defendants."  Letter dated Mar. 2, 2006 (Docket No. 223). Relying on Federal Rule of Civil
Procedure 54 which defines judgment to include "any order from which an appeal lies" and
Federal Rule of Civil Procedure 58(a) which  requires every judgment (with certain exceptions
not relevant here) to be set forth on a separate document, Defendants take the position that a
separate document - other than the February 2, 2006 Memorandum and Order was required.
Continuing, because Rule 58(b)(2) provides that when a separate document is required, judgment
is entered when entered on the civil docket *and* the earlier of either the time it is set forth in a
separate document or when 150 days have run from entry in the civil docket, Defendants argue
that the time to move for reconsideration, under either Rule 59 or Local Rule 6, did not start to
run until 150 days from February 2, 2006, to wit July 2, 2006.
 While this argument may have some surface appeal, the Advisory Committee Notes to the
2002 Amendment to Rule 58(b) indicate that in a case such as the one at bar, the time to appeal

position, the motion was required to be filed by July 18, 2006. It was not filed until September 20, 2006. This Court has no power to extend the time to file the Rule 59(e) motion. *See* Fed. R. Civ. P. 6(b); *Lichtenberg v. Besicorp Group Inc.,* 204 F.3d 397, 401 (2d Cir. 2000) (the ten-day time limit for a Rule 59(e) motion is "uncompromisable").

Defendants argue, nonetheless, that they "diligently and repeatedly sought and demonstrated in writing the grounds for reconsideration *prior* to July 18, 2006" and, therefore, the Court should "deem" their various letters as their notice of motion. The Court declines the invitation.

First, the letters referred to were pre-motion conference letters sent in supposed compliance with this Court's Individual Practice Rules. These rules, however, are clear that pre-

---

should start to run from when the Memorandum and Order was entered:

> The new all-purpose definition of the entry of judgment must be applied with common sense to other questions that may turn on the time when judgment is entered. If the 150-day provision in Rule 58(b)(2)(B)–designed to integrate the time for post-judgment motions with appeal time–serves no purpose, or would defeat the purpose of another rule, it should be disregarded. In theory, for example, the separate document continues to apply to an interlocutory order that is appealable as a final decision under collateral order doctrine. Appealability under collateral order doctrine should not be complicated by failure to enter the order as a judgment on a separate document –there is little reason to force trial judges to speculate about the potential appealability of every order, and there is no means to ensure that the trial judge will always reach the same conclusion as the court of appeals. Appeal time should start to run when the collateral order is entered without regard to creation of a separate document and without awaiting expiration of the 150 days provided by Rule 58(b)(2).

Fed. R. Civ. P. 58 advisory committee's note (2002 Amendments).

Also, Defendants' position fails to take into account that in addition to the February 2, 2006 Memorandum and Order, a separate electronic Order was entered on the docket February 2, 2006. An electronic order serves the same purpose that hard copies of separate orders once served.

motion conference letters are not required for motions for reconsideration.  *See* Indiv. Practice Rule 2(A); *cf.  Fruit of the Loom v. American Mtg. Enters. Inc.,* 192 F.3d 73, 75-77 (2d Cir. 1999) (individual practice rule requiring movant to defer filing motion until fully briefed did not extend time for making Rule 50(b) motion).  Also, regarding the effect of a pre-motion conference letter, the Rules provide "[s]ervice of a pre-motion conference letter within the time provided by Federal Rule of Civil Procedure 12(a) will constitute timely service of a motion made pursuant to Federal Rule of Civil Procedure 12(b). **But see Fed. R. Civ. P. 6(b) listing the motions for which the Court may not enlarge the time of service**."  Indiv. Practice Rule 2(C)(emphasis added). The Individual Practice Rules make clear that if the time for moving cannot be extended under Federal Rule of  Civil Procedure 6(b), the service of the pre-motion conference letter does not affect the time for filing the motion.

Second, the letters refer to the Defendants' "forthcoming" motion and the motion they "intend to submit."  A forthcoming motion is "by definition a motion that has not been made." *Camacho v. City of Yonkers.,* 236 F.3d 112, 115 (2d Cir. 2000).

Accordingly, the Rule 59(e) motion is denied as untimely.

## B.  Timeliness - Local Rule 6.3

Defendants have also moved for reconsideration pursuant to Local Rule 6.3 which provides in pertinent part:

> A notice of motion for reconsideration or re-argument of a court order determining a motion shall be served within ten (10) days after the court's determination of the original motion, or, in the case of a court order resulting in a judgment, within ten (10) days after entry of judgment.

An extension of time to file a motion for reconsideration under Local Rule 6.3 is not forbidden by Federal Rule of Civil Procedure 6(b) and, therefore, a district court has discretion to grant such an extension. *Lichtenberg*, 204 F.3d at 403; *Weisner v. 321 West 16th St. Assocs.,* 2000 WL 1585680, at * 2 (S.D.N.Y. Oct. 25, 2000).[5]

Under the Local Rules, Defendants were required to move for reconsideration no later than February 16, 2006 – ten days after the Court's determination of the Motion.[6] They did not. It was not until March 2, 2006, that they sent a letter, in response to Plaintiffs' pre-motion conference letter, stating they "intend to file a notice of appeal and/or motion for reconsideration . . . ." (Mar. 2, 2006 letter (Docket No. 223)).

Defendants take the position that this Court exercised its discretion to extend the time to file the Motion for Reconsideration when it established a briefing schedule by Order dated June 29, 2006, whereby the moving papers were to be served on July 28, 2006, and all papers were to be filed on or before September 12, 2006. Such is not the case. The mere establishment of a briefing schedule is not reflective of the merits of a motion - including its timeliness. This is especially so where, as here, no pre-motion conference letter was required in the first instance. And, under this Court's Individual Practice Rules, service of a pre-motion conference letter constitutes timely service of the motion only when two requirements are met. First, the service

_____

[5]Unlike a motion for reconsideration under Federal Rule of Civil Procedure 59(e), a motion for reconsideration under Local Rule 6.3 does not affect the time for taking an appeal from the underlying judgment. *See Lichtenberg*, 204 F.3d at 403. Moreover, an appeal from an order denying reconsideration "calls up for review only the denial of the reconsideration motion, not the merits of the underlying judgment whose alteration was sought." *Id.* at 404.

[6] There was no judgment as a result of the February 2, 2006 Memorandum and Order and, therefore, the portion of the Rule allowing a reconsideration motion to be made within ten days after of entry of judgment is inapplicable.

of pre-motion conference letter must be made within the time for making the motion. Second, the court must have discretion under Federal Rule of Civil Procedure 6 to extend the time for the motion at issue. *See* Individual Practice Rule 1C. Here, the pre-motion conference letter was not served within the time for the making of the motion.

At no time did Defendants request an extension of the time to move for reconsideration. Even if Defendants were correct in their assumption that the motion was timely if made on or before July 18, 2006 (i.e., 150 days from entry of the order under Fed. R. Civ. P. 58 plus ten additional days, excluding weekends, under the Local Rule 6.3), then it was incumbent upon Defendants to advise the Court that the established briefing schedule conflicted with the time to file the Motion for Reconsideration. *Cf. Fruit of the Loom,* 192 F.3d at 77 (noting party could have preserved right by filing Rule 50(b) motion within the prescribed ten day period and explaining to the judge its need to do so).

In sum, Defendants' Motion for Reconsideration made pursuant to Local Rule 6.3 is untimely. However, assuming *arguendo* that the application is deemed timely, as set forth below the Motion for Reconsideration is denied.

## C. The Merits - Local Rule 6.3 Reconsideration

The standard for a motion for reconsideration "is strict, and reconsideration will generally be denied unless the moving party can point to controlling decisions or [factual] data that the court overlooked – matters, in other words, that might reasonably be expected to alter the conclusion reached by the court." *Shrader v. CSX Transp., Inc.*, 70 F.3d 255, 257 (2d Cir. 1995); *see also Arum v. Miller*, 304 F. Supp. 2d 344, 347 (E.D.N.Y. 2003) ("To grant such a motion the Court must find that it overlooked matters or controlling decisions which, if considered by the

Court, would have mandated a different result.") (citation and internal quotation marks omitted).

"The major grounds justifying reconsideration are 'an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice.'" *Virgin Atl. Airways, Ltd. v. Nat'l Mediation Bd.*, 956 F.2d 1245, 1255 (2d Cir. 1992) (quoting 18 C. Wright, A. Miller & E. Cooper, *Federal Practice & Procedure* § 4478 at 790). Thus, a "'party may not advance new facts, issues, or arguments not previously presented to the Court.'" *Nat'l Union Fire Ins. Co. v. Stroh Cos.*, 265 F.3d 97, 115 (2d Cir. 2001) (quoting *Polsby v. St. Martin's Press*, No. 97 Civ. 690, 2000 WL 98057, at *1 (S.D.N.Y. Jan. 18, 2000)).

Here, the Defendants' Motion for Reconsideration is premised on (1) the Court's alleged failure to consider their unclean hands argument; (2) the Court's apparent ignorance of controlling precedent and misconstruction of deposition testimony in finding Defendants' reliance was unreasonable as a matter of law; and (3) the Court's apparent misplaced reliance on the absence of a request for specific performance of the settlement agreement when Defendants were not required to specifically seek specific performance in order to be awarded that relief.

### 1. Unclean Hands

In its February 2, 2006 Memorandum and Order, the Court stated that Defendants had asserted in their answer numerous defenses, including unclean hands, which played no part in the decision "as they were not argued by [Defendants]." February 2, 2006 Memorandum and Order at p. 6 n.2. Defendants assert that, with respect to unclean hands, this was in error as "in fact defendants argued throughout their papers that plaintiffs' misconduct precluded the award of specific performance on the 1998 Contract." (Def. Mem of Law in Support of Their Motion to Stay, Reconsider and Vacate the February 2, 2006 Order ("Def. Mem.") at 9.)

The Court's statement that Defendants did not argue unclean hands was erroneous to the extent that, although there was no specific section in their Memoranda addressed to the issue of unclean hands, Defendants did in fact argue, throughout their papers, that Plaintiffs' conduct precluded the equitable remedy of specific performance. (*See* Defendants'/Counterclaimants' Memorandum of Law in Opposition to Plaintiffs' Motion for Summary Judgment at 21 -25.)

That having been said, the Court's erroneous statement does not warrant a change in result because the Court did, in fact, examine each asserted category of misconduct and found they did not present a basis for denying relief to the Plaintiffs. In effect, the Court did consider the unclean hands defense.

For example, Defendants refer to their argument that Plaintiffs' conduct during the negotiation and formation of the memorandum of sale and the Contract, including oral promises regarding the limitations on the size and style of the house, justify the denial of relief. (Def. Mem. at 10.) This Court spent no less than ten pages discussing the Plaintiffs' conduct leading up to the Contract and concluded it did not justify denial of the remedy of specific performance. *See* February 2, 2006 Memorandum and Order at 10-22. That the Court did not use the words "unclean hands" is of no substantive moment. The rationale behind the doctrine of unclean hands is "that 'the equitable powers of this court can never be exerted in behalf of one who has acted fraudulently, or who by deceit or any unfair means has gained an advantage.'" *Pennecom B.V. v. Merrill Lynch & Co., Inc.*, 372 F.3d 488, 493, (2d Cir. 2004) (quoting *Bein v. Heath*, 47 U.S. 228 (1848)). The lynchpin of unclean hands is conduct. *See, e.g., Dunlop-McCullen v. Local 1-S, AFL-CIO-CLC,* 149 F.3d 85, 90 (2d Cir. 1998); N.Y. Jur. 2d Equity at §113. This Court thoroughly discussed the Plaintiffs' conduct and concluded it did not justify the denial of

specific performance.  While unclean hands can constitute a bar to specific performance, "equity will not relieve parties from bargains simply because they are unreasonable or unprofitable." *Khayyam v. Diplacidi*, 167 A.D.2d 300 (1st Dept. 1990).

Nor does Plaintiffs' alleged conduct in connection with the settlement agreement constitute unclean hands so as to give this Court pause in ordering specific performance.  The law in New York is that "[c]onduct which occurs during the litigation of the lawsuit, rather than during the accrual of the action, cannot form the basis of an equitable defense." *EEOC v. Bay Ridge Toyota,* 327 F. Supp. 2d 167, 173 (E.D.N.Y. 2004) (citing *Warner Bros. v. Gay Toys, Inc.,* 724 F.2d 327, 334 (2d Cir. 1983)).  Here, the conduct alleged to have occurred during the litigation which purportedly constitutes unclean hands is insufficient to preclude Plaintiff's receipt of equitable relief.

The Motion for Reconsideration on the basis of "unclean hands" is denied.

## 2.  Reliance

The second basis asserted for reconsideration is that this Court appeared to ignore controlling precedent that whether reliance is reasonable is generally a question for the jury and misconstrued deposition testimony.  Neither of these arguments justify reconsideration.

These same arguments were presented to the Court in the underlying motion papers and were meticulously addressed in the February 2, 2006 Memorandum and Order.  It is well-established that a motion for reconsideration "should not be granted where the moving party seeks solely to relitigate an issue already decided." *Shrader*, 70 F.3d at 257; *see also Pannonia Farms, Inc. v. USA Cable,* No. 03 Civ. 7841, 2004 WL 1794504, at *2 (S.D.N.Y. Aug. 10, 2004)

(noting that reconsideration is not an opportunity to take "a 'second bite at the apple' for a party dissatisfied with a court's ruling.").  Accordingly, reconsideration is denied.

### 3 .  The Need to Request Specific Performance of the Settlement Agreement.

Defendants' final argument in support of reconsideration is that in ordering specific performance of the Contract, the Court erroneously relied on Defendants' failure to request specific performance of the settlement agreement. They point to their request "for such other and further relief" as sufficient to encompass specific performance.

In support of their argument that they were not required to specifically seek specific performance of the settlement agreement in order to be awarded that relief, Defendants cite *DePace v. Matsushita Electric Corporation of America,* 257 F. Supp. 2d 543, 566 (E.D.N.Y. 2003), and Rule 54(c) of the Federal Rules of Civil Procedure.

Under Rule 54(c), a court may grant any relief to which a prevailing party is entitled, whether or not that relief was expressly sought in the complaint.  *See* Fed. R. Civ. P. 54(c). However, unasked-for-relief should not be granted when the opposing party has no notice and would thereby be prejudiced.  *See Powell v. Nat'l Bd. of Med. Exam'rs,* 364 F.3d 79, 86 (2d Cir. 2004).

*DePace* involved a motion to dismiss.  *See* 257 F. Supp. at 566.  In contrast, the instant case involved fully explored claims that were the subject of a motion for summary judgment and a motion for judgment as a matter of law.

It is clear that "Rule 54(c) does not allow the district court to award relief based on a theory that was not properly raised at trail."  *Old Republic Ins. Co. v.  Employers Reins. Corp.,*

144 F.3d 1077 , 1080 (7th Cir. 1998).  As the First Circuit explained in *Rodriguez v.  Doral*

*Mortgage Corporation,* 57 F.3d 1168 (1st Cir. 1995):

> "Rule 54(c) creates no right to relief premised on issues not
> presented to, and litigated before, the trier." *Dopp [v.  HTP
> Corp.]*, 947 F.2d 506, 518 (1st Cir. 1991); *see also In re Revinius
> Inc.,* 977 F.2d 1171, 1177 (7th Cir. 1992) (holding that "Rule 54(c)
> does not allow a party to obtain relief based upon . . . a theory that
> was not properly raised at trial"); *Evans Prods.  Co.  v.  West Am.
> Ins. Co.,* 736 F.2d 920, 923-24 (3d Cir. 1984) (explaining that the
> rule permits relief predicted on a particular theory "only if that
> theory was squarely presented and litigated by the parties at some
> stage or other of the proceeding"); *Cioffe v. Morris,* 676 F.2d 539,
> 541 (11th Cir. 1982) (similar).  Thus, Rule 54(c)'s concern for
> appropriate relief does not include relief which a plaintiff has
> foregone because of failures in the pleadings or in the proof.  *See* 6
> James W. Moore et al., *Moore's Federal Practice* ¶ 54.62 (2d ed.
> 1985). . . . Rule 54(c)['s] . . . safety net cannot be stretched so
> widely as to grant a plaintiff relief on an unpleaded theory of which
> the defendant had not notice. . . . A federal district court may not,
> of its own volition, after the parties have rested, recast the
> complaint and, without notice, predicate its decision on a theory
> that was neither pleaded nor tried.  *See Green v.  Town of
> Blooming Grove,* 935 F.2d 507, 510-11 (2d Cir.)  (reversing
> exercise of jurisdiction over pendent claim that was neither pleaded
> nor discretely raised during the litigation) . . . .

57 F.3d at 1173-74.  This rational is equally applicable to motions for summary judgment and/or

motions for judgment as a matter of law.  On such motions the parties are required to lay bear

their proof and their arguments as to why (or why not) the moving party is entitled to judgment

as a matter of law.  *See* Fed. R. Civ. P. 56.  It is the job of counsel, not the court, to frame legal

arguments.  "It is not appropriate [for a court] to give advice to experienced . . . litigators."  *In re

Pub. Offering Sec. Litig.,* 483 F.3d 70, 73 (2d Cir. 2007).  To paraphrase the Second Circuit in an

analogous context, "[a]n argument based on hindsight regarding how a movant would have

preferred to have argued its case does not provide grounds for Rule [54(c)] relief . . . nor does the

failure to interpose a defense that could have been presented earlier . . . ." *Paddington Partners v. Bouchard,* 34 F.3d 1132, 1147 (2d Cir. 1994) (citations omitted).

In this case, Defendants never raised as a defense or argued in opposition to the motion for summary judgment granting specific performance that there was an accord or that they were seeking specific performance of the settlement agreement. *See* Memorandum of Decision and Order, dated February 2, 2006 at 2 ("Neither party seeks enforcement of the settlement agreement but rather both parties have resumed their initial claims); *id.* at 28 (noting, "White does not request enforcement of the settlement agreement. White instead requests compensatory damages . . . ."); *id.* at 33 ("As the Court held above, summary judgment granting Petrello's request for specific performance of the Contract of Sale is appropriate. Because White does not seek specific performance of the settlement agreement, White's seventh and eighth claims would not disturb that holding.). *See generally* Fed. R. Civ. P. 8(c) (requiring a party to affirmatively plead, inter alia, accord and satisfaction and any other matter constituting an avoidance or affirmative defense). Merely because a defense or argument exists in thin air, so to speak, does not make it incumbent on the Court to address the issue where the parties are represented by experienced and competent counsel and the decision not to raise an issue or argument may well be the result of case strategy. It is not for the Court to second guess the reasonable, professional judgment of counsel. *Cf. Lawrence v. Artuz,* 91 F. Supp. 2d 528 (E.D.N.Y. 2000).

Even assuming that the prayer for "such other and further relief" in the counterclaims should have been read as a request for equitable relief and specific performance of the settlement agreement, no relief is warranted. First, Defendants never raised any argument even touching upon specific performance of the settlement agreement in opposition to Plaintiffs' motion for

summary judgment seeking specific performance of the Contract. This "new" argument does not carry the motion as a reconsideration motion is not the proper avenue to pursue a new argument.[7] The time to have raised specific performance of the settlement agreement in the first instance was in the underlying motion, i.e., Plaintiffs' Motion for Summary Judgment. The Court rejects Defendants' attempt to reargue–via a motion for reconsideration –a matter that was never argued by Defendants in the first instance. Second, as discussed at length above, Defendants made an election to pursue their claims under the original Contract rather than under the settlement agreement when they moved for judgment as a matter of law. *See, supra,* at 2-8. Having made that election, they are precluded from seeking any relief based upon the settlement agreement - whether for damages or specific performance.

The Motion for Reconsideration is denied.

## III. Stay Pending Appeal

Defendants request a stay of the specific performance of the Contract pending appeal. Plaintiffs do not oppose such a stay during "a timely appeal" of the Court's February 2, 2006 Memorandum and Order. This Court is authorized to issue a stay pending appeal under Federal Rule of Civil Procedure 62. Although Defendants filed a notice of appeal, the appeal was withdrawn without prejudice to reactivation within thirty days of this Court's decision on the

---

[7] Defendants' contention that the "Court sua sponte raised the issue of defendants' failure to explicitly request specific performance of the settlement agreement" and, therefore, they "should not be deprived of an opportunity to respond to this portion of the Order on the theory that they should have somehow anticipated this issue in the first instance" is spurious. The Court did not sua sponte raise the issue – it merely recited what issues had and had not been framed by the parties. In any event, parties are not entitled to "respond to" a court's decision. Counsel should have anticipated the issue and the failure to do so does not warrant granting reconsideration.

Motion for Reconsideration. *See* Mandate of U.S. Court of Appeals, Docket No. 238.

Accordingly, this Court shall stay specific performance of the Contract subject to Defendants' restoration of their appeal within thirty (30) days of the date hereof.

### *CONCLUSION*

For the reasons set forth above, Plaintiffs' Motion to Dismiss the counterclaims is GRANTED,  Defendants' Motion for Reconsideration and Vacatur is DENIED and Defendants' Motion for a Stay Pending Appeal is GRANTED on the condition that Defendants move to restore their appeal within 30 days of the date hereof.

**SO ORDERED.**

Dated:  Central Islip, New York
     August 7, 2007
                                        /s/
                                        Denis R. Hurley
                                        United States Senior District Judge