UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X
ANTHONY G. PETRELLO and CYNTHIA
A. PETRELLO,

                Plaintiffs,                        **MEMORANDUM**

      - against -                      01-CV-3082 (DRH) (MLO)

JOHN C. WHITE, JR., WHITE INVESTMENT
REALTY, LP.,
                Defendants.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X
**A P P E A R A N C E S :**

**BERG & ANDROPHY**
Attorneys for Plaintiffs
230 Park Avenue, Suite 1000
New York, New York 10169
By: David H. Berg, Esq.

**SEYFARTH SHAW, LLP**
Attorneys for Defendants
620 Eighth Avenue
New York, New York 10018
By: Brian S. Cousin, Esq.

**HURLEY, Senior District Judge:**

      This case centers around an August 25, 1998 contract of sale (the "Contract") for 9.56

acres of waterfront property located in Sagaponeck, New York (referred to as lots 4, 5, and 6).  In

a Memorandum and Order dated February 2, 2006,  familiarity with which is presumed, this

Court (1) granted Plaintiffs' motion for summary judgment seeking (a) specific performance of

the Contract for the sale of lots 4, 5, and 6, and (b) dismissal of Defendants' counterclaims for

common law fraud, fraud in the inducement, breach of fiduciary duty, breach of constructive

trust, and a declaratory judgment that the Contract is null and void; (2) denied Defendants'

motion for judgment as a matter of law; (3) denied  Defendants leave to amend to add a proposed

sixth counterclaim and (4) granted Defendants leave to amend to add their proposed seventh and eighth counterclaims.  By Memorandum and Order dated August 7, 2007,  familiarity with which is also presumed, the Court granted Plaintiffs' motion to dismiss the seventh and eighth counterclaims, denied Defendants' motion for reconsideration and vacatur of the February 2, 2006 Order, and granted Defendants' motion for a stay pending appeal.  By decision dated July 10, 2008, the Second Circuit dismissed Defendants' appeals from the aforementioned orders for lack of an appealable order.  *See Petrello v. White*, 533 F.3d 110, 112 (2d Cir. 2008).

In a rare moment of consensus, Plaintiffs and Defendants now share the same goal: to have the Second Circuit review, as soon as possible, this Court's grant of summary judgment in favor of Plaintiffs on their claim for specific performance of the sale of lots 4, 5, and 6.  The parties differ, however, on how to achieve that goal and whether a stay pending appeal should be entered.  Plaintiffs seek the entry of both an injunctive order that is sufficiently specific to satisfy the requirements of Rule 65 and certification of partial final judgment under Rule 54(b). Plaintiffs oppose any stay pending appeal and seek to have the closing of sale within ten days of entry of any order or judgment.  Defendants, on the other hand, oppose the entry of an injunctive order and seek certification of a partial final judgment, with a stay of said judgment pending appeal.

As discussed below, having found that the requirements of Rule 54(b) are met, the Court shall certify a partial judgment. The partial judgment shall include the dismissed counterclaims and the claim for specific performance of the sale of lots 4, 5, and 6 and, with regard to the aforementioned specific performance, shall direct the closing of title on April 3, 2009, with no stay thereof.

***Discussion***

## Rule 54(b) Certification

"Rule 54(b) is designed to facilitate the entry of judgments upon one or more but fewer

than all claims . . . in an action involving more than one claim . . . .  The basic purpose of Rule

54(b) is to avoid the possible injustice of a delay in entering judgment on a distinctly separate

claim . . . until final adjudication of the entire case by making an immediate appeal available."

Wright & Miller, 10 Federal Practice and Procedure § 2654 (1998).   However, "[r]espect for the

historic federal policy against piecemeal appeals requires that a Rule 54(b) certification not be

granted routinely. The power should be used only in the infrequent harsh case where there exists

some danger of hardship or injustice through delay which would be alleviated by immediate

appeal."  *Citizens Accord, Inc. v. Town of Rochester*, 235 F.3d 126, 128-29 (2d Cir. 2000) (per

curiam) (internal citations and quotation marks omitted).

Rule 54(b) provides:

> When an action presents more than one claim for relief -
> whether as a claim, counterclaim, crossclaim, or third-party claim -
> or when multiple parties are involved, the court may direct entry of
> a final judgment as to one or more, but fewer than all, claims or
> parties only if the court expressly determines that there is no just
> reason for delay.  Otherwise, any order or other decision, however
> designated, that adjudicates fewer than all the claims or rights and
> liabilities of fewer than all the parties does not end the action as to
> any of the claims or parties and may be revised at any time before
> entry of a judgment adjudicating all the claims and all the parties'
> rights and liabilities.

Fed. R. Civ. P. 54(b).

"Rule 54(b) contains three prerequisites for concluding that a decision or order is a  final

judgment:  (1) multiple claims or multiple parties must be present, (2) at least one claim, or the

3

rights and liabilities of at least one party, must be finally decided within the meaning of 28 U.S.C. § 1291, and (3) the district court must make an express determination that there is no just reason for delay and expressly direct the clerk to enter judgment." *In re Air Crash at Belle Harbor*, 490 F.3d 99, 108-09 (2d Cir. 2007) (internal quotations omitted) (quoting *Ginett v. Computer Task Group, Inc.*, 962 F.2d 1085, 1091 (2d Cir. 1992)).

When multiple claims are involved, "a court should consider the degree to which the adjudicated claim is separable from the claims remaining in the case . . . ." *Richardson v. City of New York*, 2007 WL 1732424, *1 (S.D.N.Y. June 14, 2007). A court should not enter a Rule 54(b) judgment on a particular claim unless it is "separable from the claims that survive." *Cullen v. Margiotta*, 811 F.2d 698, 711 (2d Cir. 1987), *overruled on other grounds, Agency Holding Corp. v. Malley Duff & Assoc.*, 483 U.S. 143 (1987); *see also Curtiss-Wright Corp. v. Gen'l Elec. Co.*, 446 U.S. 1, 8 (1980). The court must determine "whether the claims [sought to be certified] [a]re separable from the others remaining to be adjudicated and whether the nature of the claims already determined [i]s such that no appellate court w[ill] have to decide the same issues more than once even if there [a]re subsequent appeals." *Curtiss-Wright Corp.*, 446 U.S. at 8. A claim is "separable" if it embraces "at least some different questions of fact and law and could be separately enforced or 'if different sorts of relief' are sought." *Cullen*, 811 F.2d at 711. "When these features are present, claims may be considered separate even if they have arisen out of the same transaction or occurrence." *Id*. "[T]he Second Circuit has instructed that "claims 'inherently inseparable' from or 'inextricably interrelated' to each other are inappropriate for rule 54(b) certification." *Richardson*, 2007 WL 1732424 *1 (quoting *Ginett*, 962 F.2d at 1096).

Factor one is met as there are multiple claims asserted in this action. Turning to factor

two, the Court concludes that both the Court's grant of summary judgment on Plaintiffs' claim

for specific performance of the sale of lots 4, 5, and 6, and the dismissal of Defendants'

counterclaims "meet[] the standard of finality governing independent litigation." *In re Air*

*Crash at Belle Harbor*, 490 F.3d at 109 (quoting *Horn v. Transcon Lines, Inc.*, 898 F.2d 589, 594

(7th Cir. 1990)). "Generally, a final order is an order of the district court that ends the litigation

on the merits and leaves nothing for the court to do but execute the judgment." *Rabbi Jacob*

*Joseph School v. Province of Mendoza*, 425 F.3d 207, 210 (2d Cir. 2005) (internal quotations

omitted) (quoting *Hallock v. Bonner*, 387 F.3d 147, 152 (2d Cir. 2004)).

The dismissal of Defendants' counterclaims for common law fraud, fraud in the

inducement, breach of fiduciary duty, breach of constructive trust, and a declaratory judgment

that the Contract is null and void by Memorandum and Order dated February 2, 2006, and the

dismissal of Defendants' counterclaims premised upon alleged breaches of a settlement

agreement by Memorandum and Order dated August 7, 2007, ended those claims on the merits.

Indeed, at this time no counterclaims remain undecided.

Turning now to the remaining claims asserted by Plaintiffs, only the following claims

have not been resolved: the claim for delay damages (the third cause of action); the claim for

specific performance of the right of first refusal on lot 1; and a claim for attorneys' fees as

damages in connection with the claim for specific performance with respect to lots 4, 5 and 6 as

authorized by New York law.

The fact that Plaintiffs seek attorneys' fees as damages in connection with the claim for

specific performance as authorized by New York law, *see, e.g., Check-mate Industries Inc., v.*

*Say Assocs.*, 104 A.D.2d 392, 478 N.Y.S.2d 924 (2d Dep't 1984), does not prevent the judgment

on the merits of the claim for specific performance of the sale of lots 4, 5, and 6 from being final within the meaning of 28 U.S.C. § 1291. *See O & G Indus., Inc. v. Nat'l R.R. Passenger Corp.*, 537 F.3d 153, 168 n.11 (2d Cir. 2008) (unresolved issues of attorneys' fees, even if said fees are sought as an element of damages, does not prevent a judgment from being final within the meaning of 28 U.S.C. § 1291).

Nor does the pendency of the claim for specific performance of the right of first refusal as to lot 1 contained in the contract of sale preclude certification. Although Plaintiff has referred to this claim as a "branch" of its claim for specific performance, in fact it involves different facts and law. For example, the claim as to the right of first refusal for lot 1 entails a determination whether White Investment Realty, L.P is a related entity as defined in the contract of sale, and whether in the event of a breach, damages or specific performance should be awarded. The claim for specific performance of the right of first refusal is not inextricably intertwined with the claim for specific performance of the sale of lots 4, 5 and 6 in that it, inter alia, pertains to a different parcel.

Moreover, the claim for delay damages does not affect the propriety of certifying the claim for specific performance of the sale of lots 4, 5, and 6. The claim for delay damages is separate and distinct, involving different facts, to wit, whether Defendants "contumaciously deprived plaintiff of a clear legal entitlement" by refusing to close, *see Check-mate Industries*, 104 A.D.2d at 392, 478 N.Y.S.2d at 925, and the amount of damages resulting therefrom. Parenthetically, should defendants prevail on appeal, this claim could be rendered moot.

Although not currently a claim, the Court must also address the issue of an alleged electric easement "recently" granted by Defendants to the Long Island Power Authority, which

easement crosses one of more of lots 4, 5 and 6. Plaintiffs seek to amend the complaint to add the Long Island Lighting Company d/b/a LIPA ("LIPA") as a defendant and seeking an injunction requiring LIPA to remove the recently installed above ground power lines and to prevent LIPA from burying power lines across lots 4, 5, or 6 without Plaintiffs' consent. Defendants respond that the easement is a temporary one which was necessary to restore electricity to residents on the property after power lines were blown down in a storm.

The contract of sale requires the delivery of a bargain and sale deed with covenant against Grantor's acts. Said covenant is as follows: "the [seller] covenants that [seller] has not done or suffered anything whereby said premises have been encumbered in any way whatsoever." 4 Warren's Weed New York Real Property § 37.14 (5th ed.). "[New York] Real Property Law § 253 states that this covenant must be construed as "meaning that the grantor has not made, done, committed, executed, or suffered any act or acts, thing or things whatsoever, whereby or by means whereof, the above mentioned and described premises, or any part thereof, now are, or at any time hereafter shall or may be impeached, charged or encumbered in any manner or way whatsoever.'" *Id.* (quoting N.Y. Real Prop. Law § 253(6)). The covenant against encumbrances attaches to and runs with the land and "is breached at the time the conveyance is made." Warren's Weed New York Real Property § 37.71[4]. "[K]nowledge of the encumbrance does not generally defeat an action for breach of the covenant." *Id.* To the extent a contract vendee might have the right to refuse to close because of an encumbrance engendered during the pendency of the contract for sale, such a right is academic in this case. Plaintiffs have indicated they wish to proceed with the closing, thereby limiting any potential remedy to damages. Damages for breach "generally are measured by the difference between the value of the land

without the servitude and the value thereof with such servitude or may be measured by the monies reasonably expended by the owner in freeing the land and extinguishing the burden. The amount paid to satisfy the encumbrance must not exceed the value of the premises and the grantee cannot recover any amount in excess of such value. Where the encumbrance is not one that can be removed by payment but [] is of a permanent nature, such as a restrictive covenant, the grantee can recover fair compensation for the injury." *Id.*

The Court's grant of summary judgment on Plaintiffs' claim of specific performance of the sale of lots 4, 5, and 6 means that at closing, Defendants are required to convey said lots by bargain and sale deed with covenant against grantor's acts. To the extent that Defendants have encumbered the lots and breached the covenant, Plaintiffs have a remedy therefore. But the existence of this potential claim - and the claim is only potential since the covenant is neither given nor breached until the conveyance is made - is based upon different facts and law and can be separately enforced from the claim for specific performance of the sale of the lots.

Accordingly, the Court concludes that Plaintiff's claim for specific performance of the contract for the sale of lots 4, 5 and 6 is separable from Plaintiffs' remaining claims and has been finally decided within the meaning of 28 U.S.C. § 1291. Hence, the second requirement for Rule 54(b) certification is satisfied.

The third and final requirement for Rule 54(b) certification is that there is no just reason for delay. It has been ten years since the contract of sale was signed. Having established their right to specific performance of the sale of lots 4,5, and 6, Plaintiffs have an interest in a prompt enforceable judgment. The Court concludes that there is no just reason for delay of entry of a judgment of specific performance.

## The Judgment for Specific Performance

Both parties have submitted proposed orders directing entry of partial final judgments. The Court finds the various proposals of both parties' unsatisfactory.

Defendants' proposed orders do not provide the needed guidance to the Clerk of Court as to the nature and terms of the judgment to be entered. More fundamentally, it does not specify the terms of the specific performance.

A judgment for specific performance is, by its nature, injunctive, i.e. it directs one party to specifically perform the obligations at issue. *See, e.g., Payroll Express Corp. v. Aetna Casualty and Sur. Co.*, 659 F.2d 285, 292 (2d Cir. 1981) (specific performance injunction of non-cancellation provision of insurance contract granted where money damages speculative and court found no "offsetting equities militating against a grant of equitable relief"); *Erving v. Virginia Squires Basketball Club*, 468 F.2d 1064, 1067 (2d Cir. 1972) (upholding specific performance injunction directing arbitration based on contract language and showing of irreparable damage). *See generally Nemer Jeep-Eagle, Inc. v. Jeep-Eagle Sales Corp.*, 992 F.2d 430, 434 (2d Cir. 1993) (holding motion for status quo injunctions pending arbitration based on status quo provision in parties' contract must be analyzed under specific performance principles). Thus, the order certifying for partial final judgment the claim for specific performance of the sale of lots 4, 5, and 6 will provide for said judgment to direct a closing of title. *See,e.g., Sabetfard v. Djavaheri Realty Corp.*, Index N0. 16242/02, slip op. at 8 (Sup. Ct. Nassau Co., Apr. 10, 2006),[1] *aff'd,* 40 A.D.3d 838, 835 N.Y.S.2d 723 (2d Dept. 2007) (granting, after trial, plaintiff's request

_____

[1] The *Sabetfard* slip opinion is available online at New York State Unified Court System Web CivilSupreme.

for specific performance of a real estate contract and directing the parties to "schedule a closing within sixty days . . . .").

The proposed order submitted by Plaintiffs specifies that the closing will take place within ten days of the entry of judgment. Such is an inadequate amount of time to prepare for the closing. Rather, the Court finds that it is appropriate to order the closing to take place on April 3, 2009. This will allow adequate time for the preparation of the necessary documents, as well as the ordering and preparation of a title report and the resolution of any issues raised by said report.

Plaintiffs' proposed order also seems to decree that the right of first refusal as to lot 1 was violated. Such a provision shall not be included as this severable and separate claim has not been addressed, no less determined.

Plaintiffs' proposal includes as attachments the documents to be executed at closing. While it is appropriate for the Court to identify and list the type of documents required to be executed at the closing, the "reasonable detail" requirement in Federal Rule of Civil Procedure 65(d)(1) does not mean that the Court must micro-manage the closing by pre-approving, at this time, the precise language to be employed in each such document. *See S.C. Johnson & Son Inc. v. The Clorox Co.*, 241 F.3d 232, 240-41 (2d Cir. 2001) ("To comply with the specificity and clarity requirements, an injunction must be specific enough and definite enough to apprise those within its scope of the conduct that is being proscribed. . . . Rule 65(d) does not require the district court to predict exactly what [a party] will think of next or to describe all possible permissible future [conduct].") (internal quotations omitted). Rather, the parties should be given the opportunity to work out the precise language of the required documents – a task the Court believes the parties should be able to accomplish independently. Nonetheless, inasmuch as the

failure to agree could lead to the failure to close, which could constitute a violation of the specific performance decree punishable by contempt, the Court deems it advisable, as a precaution, to establish the following procedure. The parties will be directed to hold a pre-closing on March 6, 2009 or such **earlier** date as the parties may agree to in writing. At said pre-closing, adjustments to the purchase price as well as the precise language of the required documents shall be addressed by the parties. In the event there remain any open items or disagreements at the conclusion of the pre-closing, the parties shall so advise the Court by letters filed no later than the close of business on March 10, 2009. Said letters shall detail the nature of the disputed item(s) and the parties' position with respect thereto. Thereafter, the Court shall (1) appoint, pursuant to Federal Rule of Evidence 706, an expert in the area of real estate and real estate title to assist the Court in the resolution of such issue(s), and (2) shall hold a hearing on the disputed issue(s) on March 28, 2009 at 10:00 a.m., following which (3) the Court shall, if needed, amend its special performance order and/or judgment to meet the reasonable certainty standard of Rule 65.

As the proposed form of orders submitted by the parties are not satisfactory, the Court has crafted its own form of order, which order shall be filed simultaneously herewith.

**<u>Other Matters Regarding the Judgment</u>**

In correspondence to the Court, as well as at the conference held in this matter, Defendants have raised several issues that need to be addressed, albeit briefly.

The first such issue relates to the subdivision map and municipal approvals. Defendants acknowledge that in the year 2000 approvals were obtained from the municipalities enumerated in the Contract (except for the New York State Department of Environmental Conservation

which determined that it did not have jurisdiction). Nonetheless, Defendants argue "there is now a new municipality within which the property lies – the Village of Sagaponack. Since the time of these approvals, the Village incorporated with the goal of protecting land from outside developers . . . . Without further inquiry by the parties, it may be presumptuous for us to assume that the relevant municipalities (including those which once approved the subdivision map and the 1998 Contract of Sale) would not at least want the opportunity to review the matter again prior to any closing." (Defendants' Letter dated November 21, 2008 (Docket No. 271)). Given the years of delay that have already been endured, the Court cannot countenance a further delay premised on such hazy musings by Defendants. The contract specifies that it is subject to the receipt of approvals from only the Town of Southhampton Planning Board, the Suffolk County Department of Health Services and the New York State Department of Environmental Conservation. The necessary approvals were obtained and the subdivision map was filed in the Office of the Suffolk County Clerk on June 21, 2000 as map file no. 20454. Defendants do not cite any authority for the proposition that the approving municipalities or the subsequently incorporated village have the right to review, modify, and/or revoke the previously granted subdivision approval.

The second issue is the matter of a stay. Defendants seek a stay pending appeal of any order or judgment requiring the transfer of the subject property, as well as a stay of any further proceedings in this Court. That request is opposed by the Plaintiffs.

The following four factors are to be considered in evaluating a motion for a stay pending appeal: "(1) whether the movant will suffer irreparable injury absent a stay; (2) whether a party will suffer substantial injury if a stay is issued; (3) whether the movant had demonstrated a

substantial possibility, although less than a likelihood, of success on the merits; and (4) the public interest that may be affected." *Hirschfeld v. Bd. of Elections*, 984 F.2d 35, 39 (2d Cir. 1993); *see also Thapa v. Gonzales*, 460 F.3d 323, 334 (2d Cir. 2006).

After considering these factors, the Court concludes that the application for a stay should be denied. The Defendants have not demonstrated a substantial possibility of success on the merits and the Court is underwhelmed by the claim that the public interest supports issuance of a stay. Plaintiffs have already waited ten years to close on the sale of the property and having prevailed on their claim, should not have to endure a further delay. Finally, the cases cited by Defendants in support of their claim that they will suffer irreparable harm are distinguishable.

### Conclusion

The Court shall enter an Order, pursuant to Rule 54(b), directing the Clerk of Court to enter partial final judgment granting specific performance of the contract for sale of lots 4, 5, and 6 and dismissing each of Defendants' counterclaims and denying a stay pending appeal.

Dated: Central Islip, New York
         December 30, 2008

/s/_____
Denis R. Hurley
United States Senior District Judge