UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------X
ANTHONY G. PETRELLO and CYNTHIA
A. PETRELLO,

                Plaintiffs,              **MEMORANDUM & ORDER**

      - against -                       01-CV-3082 (DRH) (MLO)

JOHN C. WHITE, JR., WHITE INVESTMENT
REALTY, LP.,

                Defendants.
---------------------------------X
**A P P E A R A N C E S :**

**BERG & ANDROPHY**
Attorneys for Plaintiffs
230 Park Avenue, Suite 1000
New York, New York 10169
By:    David H. Berg, Esq.

**ESSEKS, HEFTER & ANGEL, LLP**
Attorneys for Plaintiffs
108 East Main Street
Riverhead, New York 11901
By:    Nica B. Strunk, Esq.

**McDERMOTT WILL & EMERY LLP**
Attorneys for Defendants
340 Madison Avenue
New York, New York 10173
By:    Daniel N. Jocelyn, Esq.
        Banks Brown, Esq.
        Monica Asher, Esq.

**HURLEY, Senior District Judge:**

      This case centers around an August 25, 1998 contract of sale (the "Contract") for 9.56

acres of waterfront property located in Sagaponeck, New York (referred to as lots 4, 5, and 6).

Presently before the Court for resolution is the sole remaining issue precluding the closing of title

viz. the meaning of the phrase "shall be subject to covenants that lots 5 and 6 shall be owned by a

common owner of record" as used in ¶ 33(2) of the Rider to the Contract. Plaintiffs contend that the subject phrase means that the lots will have at least one owner in common, while Defendants contend that it means the lots will be owned by the same person or persons. For the reasons set forth below, the Court holds that the phrase requires that the title to lots 5 and 6 shall be in the same person or persons.

**Background**

The relevant facts are set forth in the various decisions rendered by the Court, familiarity with which is presumed. For present purposes it suffices to state that by Order dated December 30, 2008, the Court directed specific performance of the Contract. As relevant hereto, the Court ordered that:

> there shall be held a closing of title for certain real property known as lots 4, 5, and 6 on the subdivision Map of John C. White Farm (recorded in the Office of the Suffolk County Clerk on June 21, 2000 as Map File No. 10454) . . . and that at such closing, upon the payment by the Plaintiffs Anthony G. Petrello and Cynthia A. White of the balance of the purchase price, as adjusted in accordance with the terms of the Contract, (a) Defendant John C. White Jr. shall (I) convey to Plaintiffs Anthony G. Petrello and Cynthia A. White by bargain and sale deed with covenants against grantor's acts certain real property known as lots 4, 5 and 6 on the subdivision Map of John C. White Farm (recorded in the Office of the Suffolk County Clerk on June 21, 2000 as Map File No. 10454) which conveyance shall be subject to covenants that lots 5 and 6 shall be owned by a common owner of record and shall not be further divided . . . .

Order dated December 30, 2008, as amended January 5, 2009. The Court further directed the parties (1) to hold a pre-closing so that adjustments to the purchase price as well as the precise language of the required documents could be addressed, and (2) in the event there remained any open items or disagreements at the conclusion of the pre-closing to so advise Court by letter.

There were in fact a number of disagreements at the conclusion of the pre-closing. Only the current dispute concerning paragraph 33(2) remains unresolved. That paragraph provides: "Lots 5 and 6 shall be subject to a covenant that they shall be owned by a common owner of record. This paragraph shall survive delivery of the deed."

By Orders dated October 28, 2009 and November 3, 2009, the Court appointed an expert to render an opinion "on the question whether the phrase 'owned by a common owner of record' as used at paragraph 33(2) . . . is a term of art in the area of real estate, and if so, what is its meaning in the present context." The court-appointed expert has rendered an opinion in which he concludes that the subject phrase (1) is not a term of art; (2) is unambiguous and should be decided within the four corners of the contract; and (3) requires that lots 5 and 6 have at least one common owner between them. *See* Expert Report (Dkt. No. 344) at 2-5. Although neither party disputes the expert's conclusions that the phrase is neither a term of art nor ambiguous, Defendants challenge his opinion as to its meaning.

## Discussion

"'[T]he fundamental, neutral precept of contract interpretation is that agreements are construed in accord with the parties' intent.'" *Eternity Global Master Fund Ltd. v. Morgan Guar. Trust Co. of N.Y.*, 375 F.3d 168, 177 (2d Cir. 2004) (quoting *Greenfield v. Philles Records, Inc.*, 98 N.Y.2d 562, 569 (2002)). "Typically, the best evidence of intent is the contract itself; if an agreement is 'complete, clear and unambiguous on its face[, it] must be enforced according to the plain meaning of its terms.'" *Id.; see also Continental Ins. Co. v. Atlantic Cas. Ins. Co.*, 603 F.3d 169, 180 (2d Cir. 2010) ("When interpreting a contract, the 'intention of the parties should control ...[, and] the best evidence of intent is the contract itself; if an agreement is complete,

3

clear and unambiguous on its face, it must be enforced according to the plain meaning of its terms.'") (quoting *Hatalud v. Spellings*, 505 F.3d 139, 146 (2d Cir. 2007). "Where the language of the contract is unambiguous, and reasonable persons could not differ as to its meaning, the question of interpretation is one of law to be answered by the court." *Rothenberg v. Lincoln Farm Camp, Inc.*, 755 F.2d 1017, 1019 (2d Cir. 1985).

> "Ambiguity is determined by looking within the four corners of the document, not to outside sources. . . ." *Kass v. Kass,* 91 N.Y.2d 554, 566, 673 N.Y.S.2d 350, 356, 696 N.E.2d 174 (1998). Contract language is not ambiguous if it has "a definite and precise meaning, unattended by danger of misconception in the purport of the [contract] itself, and concerning which there is no reasonable basis for a difference of opinion." *Breed v. Insurance Company of North America*, 46 N.Y.2d 351, 355, 413 N.Y.S.2d 352, 355, 385 N.E.2d 1280 (1978); *see, e.g., Seiden*, 959 F.2d at 428. "Language whose meaning is otherwise plain does not become ambiguous merely because the parties urge different interpretations in the litigation." *Hunt Ltd. v. Lifschultz Fast Freight, Inc.*, 889 F.2d 1274, 1277 (2d Cir. 1989). Rather, "[a]mbiguous language is language that is 'capable of more than one *meaning* when viewed objectively by a reasonably intelligent person who has examined the context of the entire integrated agreement and who is cognizant of the customs, practices, usages and terminology as generally understood in the particular trade or business.'" *Revson v. Cinque & Cinque, P.C.*, 221 F.3d 59, 66 (2d Cir. 2000) . . . (quoting *Seiden Assoc., Inc. v. ANC Holdings, Inc.,* 959 F.2d 425, 428 (2d Cir. 1992) (other internal quotation marks omitted)); *see, e.g., Readco, Inc. v. Marine Midland Bank*, 81 F.3d 295, 299 (2d Cir. 1996) ("contract is ambiguous where reasonable minds could differ on what a term means").

*JA Apparel Corp. v. Abboud*, 568 F.3d 390, 396-97 (2d Cir. 2009) (brackets in original). "Whether or not a writing is ambiguous is a question of law to be resolved by the Courts." *Eternity Global Master Fund*, 375 F.3d at 178 (internal quotation marks omitted). "In interpreting an unambiguous contract, the court is to consider its '[p]articular words' not in

isolation 'but in the light of the obligation as a whole and the intention of the parties as manifested thereby,' . . . but the court is not to consider any extrinsic evidence as to the parties' intentions." *JA Apparel Corp.*, 568 F.3d at 396-97 (quoting *Kass*, 91 N.Y.2d at 566 and citing *Seiden,* 959 F.2d at 428 and *Metropolitan Life Insur. Co. v. RJR Nabisco, Inc.*, 906 F.2d 884, 889 (2d Cir.1990)).

Both parties maintain that the subject language is clear. *See, e,g*, Plaintiffs' November 6, 2009 Letter (Dkt No. 32) at 3 (urging the Court to construe paragraph 33(2) "according to its plain meaning"); Defendants' November 13, 2009 letter (Dkt. No. 325) at 1 ("the paragraph means what it says"). Alternatively, each argues that even if, arguendo, it is ambiguous, the testimony supports their position and the other party's interpretation requires "rewriting" the subject language. Of course, Plaintiffs argue that the clear import of the language means that the two lots must have one owner in common thus, in their view, preserving the single and separate ownership of the two lots, whereas Defendants argue that it means the two lots must have the same owner or owners.

First, in accordance with the opinion of the court-appointed expert, the Court finds that the phrase "owned by a common owner" is not a term of art.

Next, the Court finds that the language is unambiguous. That the parties and the expert have reached differing conclusions as to the plain meaning of the language does not render the language ambiguous. "Language whose meaning is otherwise plain does not become ambiguous merely because the parties urge different interpretations in the litigation." *Hunt Ltd. v. Lifschultz Fast Freight, Inc.*, 889 F.2d 1274, 1277 (2d Cir. 1989). Given the Court's conclusion that the language is unambiguous, its interpretation is one of law for the Court and extrinsic evidence will

5

not be considered.

The question is therefore what is the plain meaning of the phrase "shall be owned by a common owner of record." The Court finds compelling Defendants' argument that the use of the language "shall be owned" clearly states a condition of ownership of lots 5 and 6, i.e. the only person or persons who can own lot 5 shall be the person or persons who own lot 6 and vice versa. *See* Defendants' Objection to Expert Report at 4. As Defendants appropriately maintain:

> "By using the phrase "shall be owned by", the paragraph is clearly stating a condition of ownership of the lots. The only person who can own that land shall be a common owner. Because of this, no person who is not a common owner can own this land. Notably, the paragraph does not say that the lots will "have a common owner" or "have an owner in common." The problem with Plaintiffs' and [the court-appointed expert's] analysis is that their focus is exclusively on the phrase " a common owner" where as [sic] the key to understanding the paragraph is the use of the phrase "shall be owned." The paragraph states that the lots "shall be owned by a common owner of record" not that they "shall have a common owner of record" - this is the important distinction between what the paragraph says, and the meaning that Plaintiffs and [the court-appointed expert] are trying to read into it.

(*Id.* at 4-5.) The clear meaning of the phrase "shall be owned by a common owner" requires the two lots to have unity of ownership.[1] Accordingly, the deed from defendant White for lot 5 shall convey that lot to the same person or persons as to which lot 6 is conveyed. In other words, both lots may be conveyed to either Anthony Petrello, or Cynthia Petrello, or both Anthony and

---

[1] Neither party cites any cases to support its interpretation of the subject phrase. The apparent dearth of case law interpreting the phrase "owned by a common owner" is not surprising given that it means what it says, i.e. is unambiguous. Parenthetically, the phrase has been used in easement cases to signify parcels having a unity, rather than a partial overlap, of ownership. *See, e.g., Custom Warehouse Inc. v. Lenertz*, 975 F. Supp. 1240, 1248 (E.D. Mo. 1997)*; see generally Lissik v. Monasky*, 5 A.D.2d 934, 171 N.Y.S.2d 871, 872 (3d Dept. 1958); *Tricker v. Pa. Turnpike Comm'n*, 717 A.2d 1078, 1082 (Pa. Cmwlth. 1998).

Cynthia Petrello.

Plaintiffs' argument that requiring the two lots to have unity of title would result in a merger and therefore "be irreconcilable with the undisputed purpose of creating Lot 6 as a separate lot - namely, to allow the Petrellos to keep the existing cottage on Lot 6 while also building a new house on Lot 5" (Dkt. No. 328 at 4), is not germane given the unambiguous meaning of the phrase. Nor is the Court persuaded by Plaintiffs' argument that to the extent contractual the phrase at issue requires the two lots be titled in the same person(s), such a requirement was "waived" when Mr. Reale, Defendants' then real estate attorney, prepared deeds for the two lots which did not name the same grantees. (*See* Dkt. No. 322 at 3.) Mr. White refused to execute said deeds and no closing of title took place.

**Conclusion**

Having considered all the arguments of the parties and the report of the court-appointed expert, the Court finds that the contractual provision requiring that "Lots 5 and 6 shall be subject to a covenant that they shall be owned by a common owner of record" is unambiguous and requires unity of ownership of the two lots. [2]

As there are no further issues precluding the closing of title in accordance with the Court's Orders and Judgment granting specific performance of the Contract, the parties are

---

[2] The Court need not address the issue raised by the court-appointed expert sua sponte as to whether the covenant that lots 5 and 6 shall be owned by a common owner of record "runs with the land." Both the Court's December 30, 2008 Order, as amended, and the judgment entered pursuant thereto require that the "conveyance be subject to covenants that lots 5 and 6 shall be owned by a common owner of record and shall not be further subdivided." Moreover, the Court was advised that the parties agreed that "the language of paragraph 33(2) of the Rider [viz. the disputed phrase] should be included in the deeds." (Dkt. No. 280 at 13.) Accordingly, the language of paragraph 33(2) shall be included in the deeds for lots 5 and 6.

directed to close title to the property at a date, time and place mutually agreed upon by the parties but no later than thirty (30) days from the date hereof.

**SO ORDERED.**

Date:   Central Islip, New York
         June 9, 2010

                                              /s/
                                              Denis R. Hurley
                                              Senior District Judge