UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------X
ANTHONY G. PETRELLO and
CYNTHIA A. PETRELLO,

                                      **MEMORANDUM & ORDER**
            plaintiffs,                    **01 CV 3082 (DRH)(AKT)**

      -against-

JOHN C. WHITE, JR. and
WHITE INVESTMENT REALTY, LP,

                     defendants.
-----------------------------------------------------X

**APPEARANCES:**

**Esseks Hefter & Angel, LLP**
Attorneys for Plaintiffs
108 East Main Street
Riverhead, NY 11901
By:    Nica B. Strunk

**Berg & Androphy**
Attorneys for Plaintiffs
230 Park Avenue, Suite 1000
New York, NY 10169

**McDermott, Will & Emery, LLP**
Attorneys for Defendants
340 Madison Avenue
New York, NY 10173
By:    Daniel N. Jocelyn
        Monica S. Asher

**HURLEY, Senior District Judge**:

       This Memorandum and Order addresses two matters pending before the Court: (1)

the Report and Recommendation of Magistrate Judge A. Kathleen Tomlinson, which

recommends that the Court deny plaintiffs' motion for approximately $4.3 million in

attorney's fees (*see* docket no. 382), and (2) plaintiffs' motion for reconsideration of the

Court's September 30, 2011 Order adopting a separate Report and Recommendation in which plaintiffs' motion to amend was granted in part and denied in part, (*see* docket nos. 381, 391). For the reasons stated below, the Court adopts the Report and Recommendation and denies plaintiffs' motion for reconsideration.

As the details of the dispute underlying this case are recounted in numerous Orders and Reports issued throughout the course of this litigation, familiarity with the factual and procedural history of this action is assumed for present purposes.

## I. APPLICATION FOR ATTORNEY'S FEES

Plaintiffs' underlying motion seeks $4.3 million in attorney's fees arising from what plaintiffs characterize as defendants' "contumacious conduct" manifested in the form of the "outright, knowing and sworn falsehoods" of defendants. (Ps' Obj. at 9.)

In her Report and Recommendation (hereinafter "Fees Report"), Judge Tomlinson took care to determine first whether plaintiffs' motion implicated federal procedural law or substantive state law. (*See* Fees Report at 5-9.) As this case is premised on diversity jurisdiction, the Court applies New York state law to substantive matters and federal law to procedural matters. *See Erie Railroad Co. v. Tompkins*, 304 U.S. 64 (1938); *see also Alyeska Pipeline Serv. Co. v. Wilderness Soc.*, 421 U.S. 240, 259 n.31 (1975)("[W]hen a federal court sits in a diversity case, . . . state law denying the right to attorney's fees or giving a right thereto, which reflects a substantial policy of the state, should be followed.")(internal quotes omitted).

Judge Tomlinson ultimately determined that plaintiffs' application should be evaluated "solely pursuant to the inherent powers afforded to federal courts." (Fees

Report at 5.) This conclusion was reached for two reasons. First, the Report concludes that the "difference between federal and New York practice in awarding attorney's fees as a sanction against litigation in bad faith is not substantial." (Fees Report at 8 (quoting *Republic of Cape Verde v. A&A Partners*, 89 F.R.D. 14, 21 n.12 (S.D.N.Y. 1980).) Therefore, the policy concerns underlying the *Erie* Doctrine fall away because, "[i]nsubstantial or trivial variations between state and federal practice are not likely to raise the sort of equal protection problems which troubled the [Supreme Court] in *Eerie*." (Report at 8 (quoting *Republic of Cape Verde v. A&A Partners*, 89 F.R.D. 14, 21 n.12 (S.D.N.Y. 1980)); *see Chambers v. Nasco, Inc.*, 501 U.S. 32, 52 (1991)(The *Erie* Doctrine applies "[o]nly when there is a conflict between state and federal substantive law.").

Second, Judge Tomlinson examined the New York state cases cited by plaintiffs in support of their position that state law should apply, and determined that the cases did not evince a substantive state policy that should trump a federal court's inherent power to impose attorney's fees. (Fees Report at 7.) These New York cases, primarily *Park S. Assocs. v. Essebag*, 451 N.Y.S.2d 345 (N.Y. Civ. Ct. 1982) and *Check-Mate Industries, Inc. v. Say Assocs.*, 104 A.D.2d 392 (2d Dep't 1984),[1] recognize an exception to the American Rule on attorney's fees where a party acts "contumaciously" or in bad faith. In her analysis of these cases, Judge Tomlinson examined the cited authorities and rationale for this exception, and concluded that both "involved the vindication of 'judicial authority.'" (Fees Report at 9); *see, e.g., Chambers*, 501 U.S. at 55 ("[F]ee-shifting here

---

[1] Plaintiffs and Judge Tomlinson both cite, without discussion, a third New York case, *CFJ Assocs. of New York, Inc. v. Hanson Industries*, 294 A.D.2d 772 (3d Dep't 2002). However, that decision merely cites the general rule in *Park S. and Check-Mate* without further analysis. The Court will therefore not examine this third case here. For similar reasons, the Court will also not address a fourth case cited by plaintiffs, but not analyzed in the Fees Report, namely, *Freidus v. Eisenberg*, 123 A.D.2d 174 (2d Dep't 1986).

is not a matter of substantive remedy, but of vindicating judicial authority."); *Revson v. Cinque & Cinque, P.C.*, 221 F.3d 71, 78 (2d Cir. 2000)("The Court has inherent power to sanction parties and their attorneys, a power born of the practical necessity that courts be able to manage their own affairs so as to achieve the orderly and expeditious disposition of cases.")(internal quotation marks omitted).

Plaintiffs argue in their objection to the Fees Report that Judge Tomlinson erred in determining that the Court should apply federal procedural law to their application. They state that by doing so, and by subsequently recommending a total denial of their motion, the Court deprived them of the opportunity to present evidence of a substantial damages remedy "at trial." (Pls. Obj., docket no. 382, at 3.)  In essence, plaintiffs urge that it is error to conclude that the state law remedy advanced here is analogous to a federal district court's inherent power to award attorney's fees to maintain discipline and decorum among litigants.  They contend that the former is a substantive "element of [] damages," whereas the latter is a federal procedural remedy. (*Id.* at 4.) Therefore, plaintiffs argue, the Court is obligated under the *Erie* Doctrine to recognize and apply this purportedly substantive state law.

### a.  *Substantive vs. Procedural Matters*

Application of the *Erie* Doctrine requires that courts distinguish between what constitutes a substantive matter and what constitutes a procedural one.  Where such a delineation is not self-evident, courts often employ the "outcome determinative" test. *See, e.g.*, *Chambers*, 501 U.S. at 52; *Hanna v. Plumer*, 380 U.S. 460, 468 (1965).  The operative question under this test is whether the disposition of an issue is "tied to the

outcome of litigation." *See Chambers*, 501 U.S. at 53. The outcome-determinative test should be applied with "reference to the twin aims of the *Erie* rule: discouragement of forum-shopping and avoidance of inequitable administration of the laws." *Hanna*, 380 U.S. at 468. In essence, a court should question "whether application of the [state] rule would make so important a difference to the character or result of the litigation that failure to enforce it would unfairly discriminate against the citizens of the forum State, or whether application of the rule would have so important an effect upon the fortunes of one or both of the litigants that failure to enforce it would be likely to cause a plaintiff to choose the federal court." *Id.* at 468 n.9.

Generally, "[t]he awarding of attorneys' fees in diversity cases . . . is governed by state law." *Grand Union Co. v. Cord Meyer Dev. Co.*, 761 F.2d 141, 147 (2d Cir. 1985). Therefore, as noted above, "in an ordinary diversity case where the state law does not run counter to a valid federal statute or rule of court, and usually it will not, state law denying the right to attorney's fees or giving a right thereto, which reflects a substantial policy of the state, should be followed." *Alyeska*, 421 U.S. at 260, n.31 (citation omitted). In New York, attorney fees are largely denied in the absence of an agreement between the parties or a statute authorizing such an award. *See, e.g., Buffalo v. J. W. Clement Co.*, 28 N.Y.2d 241, 262-63, 269 N.E.2d 895 (1971).

Here, plaintiffs do not cite to an intra-party agreement or a state statute that would entitle them to fees in this case. Rather, they argue that state decisional law establishes a substantive state policy favoring the award of attorney fees in this instance. In support, they rely primarily on two New York cases cited above: *Check-Mate*, 104 A.D.2d 392, and *Park South*, 451 N.Y.S.2d 345. Plaintiffs further argue that this right to attorney's

fees is "an element of delay damages," (Ps' Mot. at 3), presumably implying that the award of attorney's fees is necessarily tied to the outcome of the litigation and therefore substantive.

However, the argument that the subject remedy is substantive is not supported by either case. In the first of these two cases, *Park South*, 451 N.Y.S.2d 345, the court found that the landlord's holdover petition had "been undertaken in bad faith" on the basis of a "clearly insufficient and improper notice [to cure]." *Park South*, 451 N.Y.S.2d at 347. Notably, while the prevailing tenant was held not to be entitled to attorney's fees under the fee-shifting statute that would normally apply in such proceedings, *see* N.Y. Real Prop. Law § 234, she was nevertheless entitled to fees pursuant to "certain limited exceptions" to the American Rule "for example . . . where his opponent has acted in bad faith." *Id.* at 346 (citing *Hall v. Cole*, 412 U.S. 1 (1973)).

As examples of conduct warranting such an award, the *Park South* court listed the "filing of an unwarranted motion to hold an opponent in contempt," the "vexatious seeking of a preliminary injunction without cause," and the "use of dilatory tactics to stall litigation." *Id.* at 346-47 (citations omitted). Each of these examples of a party acting in "bad faith" implicates abuses of the litigation process itself. None are inherent to the underlying claim, nor are they necessarily tied to the outcome of the litigation. As the Supreme Court held in *Chambers*, "the imposition of sanctions under the bad-faith exception depends not on which party wins the lawsuit, but on how the parties conduct themselves during the litigation. 501 U.S. at 53. "*Erie* guarantees a litigant that if he takes his state law cause of action to federal court, and abides by the rules of that court, the result in his case will be the same as if he had brought it in state court. It does not

allow him to waste the court's time and resources with cantankerous conduct, even in the unlikely event a state court would allow him to do so." *Id.* at 53. Given that the rule invoked in *Park South* addresses the behavior of litigants during the course of litigation, it is difficult to credit plaintiffs' assertion here that it is borne of a substantive right independent of a court's inherent power to sanction parties for such in-court conduct, a decidedly procedural remedy.

In the second case, *Check-Mate*, the court held that attorney's fees "may be awarded as part of [plaintiff's] damages only upon a finding that defendant has contumaciously deprived plaintiff of a clear legal entitlement, forcing the latter in to the expense of rescuing itself through legal action." 104 A.D.2d at 393 (citing *Park South*, 451 N.Y.S.2d at 346). Plaintiffs appear to have seized upon the reference in *Check-Mate* to attorney's fees as a "part of damages," to advance their argument that the imposition of sanctions for certain "contumacious" conduct by a party embodies a substantial state policy. (Pls.' Obj. at 7.)

Although the *Check-Mate* case does refer to attorney's fees as part of the parties' "damages," plaintiffs provide no authority requiring the Court to equate damages with substantive remedies. Plaintiffs claim that the authority to award attorney's fees in this instance "was expressly formulated in service of the court's equitable power to award appropriate damages to make an injured party whole for breach of contract." (Pls.' Obj. at 7.) This is a rather peculiar argument considering that generally in New York "in a breach of contract case, a prevailing party may not collect attorneys' fees from the nonprevailing party unless such award is authorized by agreement between the parties, statute or court rule." *TAG 380, LLC v. ComMet 380, Inc.*, 10 N.Y.3d 507, 515, 890 N.E.2d 195 (2008)

The facts set forth in the *Check-Mate* case are too sparse to allow this Court to draw helpful analogies to the present case. However, *Check-Mate* cites and quotes *Park South* as the legal basis in state law for such an award. The behavior found so reprehensible in *Park South* was the filing of a petition based on a patently deficient notice to cure. As a matter of comparison, prosecuting a claim under such a frivolous pleading would clearly be sanctionable in federal court under Rule 11, *see* Fed. R. Civ. P. 11(b)(2) – a remedy that is unquestionably procedural in nature.

As plaintiffs point out, however, *Check-Mate* also relies on *Vaughn v. Atkinson*, 369 U.S. 527 (1962), a maritime case. There, the Court awarded attorney's fees where the defendant's "recalcitrance" in addressing plaintiff's claims, forced him "to hire a lawyer and go to court to get what was plainly owed to him under laws that are centuries old." *Id.* at 531. The facts of this case do offer some inferences regarding the substantive nature of the award of attorney's fees that may favor plaintiffs' arguments. However, the Supreme Court, in a case decided before *Check-Mate*, definitively characterized the award in *Vaughn* as premised on the well-established exception to the American Rule where there is evidence of "bad faith or oppressive litigation practices." *Alyeska*, 421 U.S. at 275. As noted above, this "bad-faith" exception is procedural and not outcome-determinative for purposes of an *Erie* analysis. *See Chambers*, 501 U.S. at 53.

To put an even finer point on the nature of the remedy awarded in *Check-Mate*, the final case cited therein is *In Re Boston and Providence R.R. Corp.*, 501 F.2d 545 (1974). In that case, the First Circuit considered the propriety of attorney's fees for filing a "vexatious and groundless motion." *Id.* at 547. In other words, sanctions were imposed strictly to address a party's conduct during litigation. The decision's analysis rests almost

exclusively on the court's inherent authority to impose "sanctions" "when a party has acted 'in bad faith, vexatiously, wantonly, or for oppressive reasons.'" *Id.* at 549 (citing *Hall v. Cole*, 412 U.S. 1, 5 (1973)).

Lastly, plaintiffs' two cited authorities for their assertion that it is "widely recognized" that the allowance of attorney's fees is substantive is inapossite to the present case. For example, the court in *Bristol Tech., Inc. v. Microsoft Corp.,* 127 F. Supp. 2d 64 (D. Conn. 2000), awarded fees in a diversity case based on a provision in a Connecticut statute. Likewise, the court in *Woods Masonry, Inc. v. Monumental Gen. Cas. Ins. Co.*, 198 F. Supp. 2d 1016 (N.D. Iowa 2002), did the same, based solely on an Arkansas statute.

In sum, *Check-Mate,* as with *Park South*, relies on decisional authority premised on the "bad faith" exception, and the Court's inherent power "to impose silence, respect, and decorum, in their presence, and submission to their lawful mandates." *Chambers*, 501 U.S. at 43. Fee-shifting in that context is "not a matter of substantive remedy, but of vindicating judicial authority." *Id.* at 55. These New York cases therefore do not manifest the substantial state policy urged by plaintiffs. Judge Tomlinson was therefore correct in her decision to analyze the fees motion "solely pursuant to the inherent powers afforded to federal courts." (Report at 5.)

### b. Lack of Substantial Difference

The Court also agrees with Judge Tomlinson's assessment that the *Erie* Doctrine is not an issue in this case because there is no substantial difference between the New York and federal courts' practice of awarding attorney's fees. (Report at 8); *accord*

*Republic of Cape Verde v. A&A Partners*, 89 F.R.D. 14, 20, n.12 (1980)("In this case there is no *Erie* problem because the difference between federal and New York practice in awarding attorneys' fees as a sanction against litigation in bad faith is not substantial and because a federal court, even when it sits in a diversity case, can exercise its inherent power to sanction those who abuse its process."); *see also id.* ("[U]nless the variation between state and federal practice is substantial a federal diversity court need not apply the *Hanna* analysis to determine which practice to follow.")

In their objections to the Report, plaintiffs argue that the difference between the two practices is significant, and that not applying state law has resulted in substantial prejudice to their right to recovery. Specifically, plaintiffs urge that by looking solely to federal law, the Court has deprived them of the "opportunity to present their proof at trial." (Pls.' Obj. at 3.) The thrust of this assertion dovetails with their argument, outlined above, that state law recognizes attorney's fees as an "element of damages." (*See id.*) Plaintiffs appear to argue that because this is a matter of damages, they should be permitted to "present evidence of attorney's fees as an element of delay damages at the trial." (*Id.* at 4.) Judge Tomlinson's error, they argue, was in "dismissing Plaintiffs' attorneys' fees claims without affording them a hearing at which to present their evidence." (Pls.' Obj. at 4.)

A similar argument was rejected by a separate Report and Recommendation issued by Judge Tomlinson on February 23, 2011 (*see* docket no. 381), which was later adopted by this Court. (*See* Order dated 9/30/11 ("Amendment Order"), docket no. 391).[2] Plaintiffs' arguments under that earlier Report confused their entitlement to relief as a

---

[2] Plaintiffs' motion for reconsideration of that Order of adoption is addressed in the second half of this decision below.

matter of law with the extent and amount of any damages they may receive. (*See* Amendment Order at 4.)  Plaintiffs fail to make that same distinction here, as evidenced by their claim that denying their present motion "without any hearing is inconsistent with the law that gives litigants wide latitude to present evidence of their damages at trial." (Pls.' Obj. at 4 (quoting *Dingxi Longhai Dairy, Ltd. v. Becwood Tech. Group L.L.C.*, 635 F.3d 1106, 1108-09 (8th Cir. 2011)("The amount of damages to be recovered is based upon the proof, not the pleadings.")).)

Plaintiffs' argument here puts the proverbial cart before the horse.  While a litigant is clearly entitled to present evidence of damages at trial, this step presupposes that he or she has established liability.  Plaintiffs characterize the Fees Report as denying them "*any* opportunity to present evidence of attorney's fees." (*Id.*)  This characterization, however, is disingenuous.  Plaintiffs were indeed given the opportunity to present evidence on the issue of attorney's fees in their motion, and they did so.  Judge Tomlinson reviewed that evidence and determined that it did not establish the requisite "bad-faith" conduct of defendants.  Having failed to meet this threshold, the issue of damages is rendered academic.

The Court is also not persuaded by plaintiffs' attempts to couch this motion for attorney's fees under the umbrella of "delay damages," which have yet to be determined in this case.[3]  The simple fact is that a motion under the present exception to the American Rule on attorney's fees—whether brought in state or federal court—requires the movant to demonstrate that the opposing party has acted in bad faith.  The burden in this regard is on the movant, and as Judge Tomlinson's well-reasoned Report correctly

---

[3] See section II of this opinion, as well as the Court's September 30, 2011 Order for a discussion of plaintiffs' claims for "delay damages" in this action.

concludes, plaintiffs have not met this burden. (*See* Report at 16 ("The bottom line is that there is insufficient evidence that the litigation strategy of Defendants was vexatious and intended to harass the Plaintiffs.").)   The Court finds no authority or rationale requiring the Court to hold a hearing so that plaintiffs can present evidence that should have been proffered at the time they first moved.

Finally, the Court recognizes that plaintiffs made an oral application to Magistrate Judge Orenstein to supplement the evidence proffered in support of their motion before he retired, and further recognizes that Judge Orenstein chose not to "entertain" the request, concluding that because the action was ongoing, the motion should "abide to the end of the case." (Pls. Obj. at 10.) However, no notation of Judge Orenstein's approach to plaintiffs' application was made on the docket, and Judge Tomlinson could certainly not have been aware of his choice when the case was later reassigned to her.  When she did enter the case, the motion remained pending, as it had since it was filed in September of 2009.  Plaintiffs could have requested that it be withdrawn without prejudice to refile later in the case, or simply renewed their request to supplement the motion to Judge Tomlinson.  No such action was taken, despite the fact that five months passed between the time Judge Tomlinson was assigned to this case and the time she issued her Report. Under these circumstances, plaintiffs could hardly have expected Judge Tomlinson to do anything but timely address the motion in the manner and form in which it was presented to the Court.

### c. *The Merits*

Having affirmed Judge Tomlinson's conclusion that federal procedural law applies to plaintiffs' motion, the Court adopts her Report, *in toto*, as if set forth herein. The Report thoroughly and correctly applied the appropriate elements and standards set forth in *Weinberger v. Kendrick*, 698 F.2d 61, 80 (2d Cir. 1982).

### d. *Newly Discovered Facts*

As will be discussed in more detail in Section II below, plaintiffs have filed a motion for reconsideration of a separate Order of this Court, which adopted Judge Tomlinson's recommendations regarding plaintiffs' motion to amend the pleadings. (Ps' Mot. Recon., docket no. 392.) The first section of plaintiffs' two-part motion for reconsideration seeks clarification as to whether this prior Court Order also adopted Judge Tomlinson's Report regarding attorney's fees – the same Report that the present Order now adopts. In the event that the Court has not addressed that Order, plaintiffs ask that the Court consider what they term as "newly discovered facts" in deciding the attorney's fees issue. (Pls' Mot. Recon. at 2-6.) In the alternative, if the Court did dispose of the attorney's fee issue in the last Order, plaintiffs' ask that the Court consider these new facts as if presented in the form of a motion pursuant to Fed. R. Civ. P. 60(b). (*Id.* at 2.)

Because the present Order addresses Judge Tomlinson's Report on attorney's fees, and the matter has not previously been disposed of, a Rule 60(b) motion is unnecessary. The Court therefore proceeds to evaluate plaintiffs' request to consider new facts as a supplemental submission in support of their objections to Judge Tomlinson's

fees Report.  In that pursuit, the Court recognizes that the newly discovered facts come in the form of a pleading from a case in Suffolk County Supreme Court which was filed after Judge Tomlinson's Report was issued. (Pls' Mot. Recon. at 2.)  Some leeway regarding the timeliness of plaintiffs' submissions may therefore be appropriate. Nevertheless, the Court need not reach this procedural question because the new facts proffered by plaintiffs do not advance the merits of their claims in any event.

To begin, the Court incorporates the standard set forth by Judge Tomlinson in her Report regarding the bad-faith exception to the American Rule on attorney's fees.  To prevail under this exception, there must be "clear evidence" that the claims at issue "are entirely without color and [are taken] for reasons of harassment or delay or for other improper purposes." (Report at 11 (citing *Weinberger v. Kendrick*, 698 F.2d 61, 80 (2d Cir. 1982)).)

Plaintiffs' newly discovered facts arise from a case filed in Suffolk County Supreme Court by the White family alleging legal malpractice against one Edward Reale. Among the Petrello's claims here of bad-faith conduct is the allegation that defendants repeatedly, knowingly, and erroneously asserted that Reale was *not* their, *i.e.* defendants', lawyer during the real estate transaction underlying this action. (*See* Pls' Br., docket no. 287-2 at 6; Pls' Mot. Recon. at 3.)  Plaintiffs allege that the newly discovered facts derived from this case in Suffolk County demonstrate that defendants' assertions regarding Reale's role in the real estate transaction were, in fact, without color.  They further argue that these new facts show that Reale gave false testimony at summary judgment that defendants used to bolster their argument that they "justifiably refused to close because the Petrellos were not abiding by alleged oral agreements not contained in

the written Contract of Sale, or because the Petrellos did not pay the down payment."
(Pls.' Mot. Recon. at 5.)

As to the first of plaintiffs' arguments, *viz.*, that defendants claimed that Reale was not their attorney, Judge Tomlinson, citing testimony offered at summary judgment, held in her Report that defendants' assertion was not entirely without color. (Fees Report at 13.) For example, Reale himself testified that his firm "was not retained to negotiate or re-negotiate the terms of the deal that had been agreed to between John [White] and the Petrellos back in 1995." (Reale Decl., docket no. 208-6 at 4.) Likewise, testimony from defendant White's son, Jeff White, provided that "Mr. Reale was not hired to negotiate or represent our interests; he was hired to facilitate the preparation of the documents that needed to be formalized so that the transaction could occur." (*Id.*) As noted, the merits of defendants' arguments here were rejected by this Court at summary judgment. *See Petrello v. White*, 412 F. Supp. 2d 215, 225 (E.D.N.Y. 2006). Nevertheless, the question at this juncture is whether there was a colorable basis for making the assertion in the first place. Having previously adopted Judge Tomlinson's conclusion on this issue, (*see* subsection c *supra* ("The Merits")), the question then becomes whether the new facts brought forth by plaintiffs now militate in favor of a different conclusion. They do not.

Defendants' argument regarding Reale's role in the real estate transaction was previously offered in the context of their counterclaim that Anthony Petrello owed them a fiduciary duty. This fiduciary claim was based on certain advice Petrello had offered defendants regarding the family property. The assertions related to this counterclaim, however, never suggested that Reale took no part whatsoever in the transaction. Rather, defendants argued that Reale's role was more technical or even ministerial, *i.e.* "to

facilitate the preparation of the documents." Their argument was, therefore, not so much categorical as is it was a matter of degree. The fact that defendants have since filed a claim for legal malpractice, while suspect, is not enough to suggest that their assertions regarding Reale's role as an attorney in the real estate transaction was without color. Notably, plaintiffs' instant application does not include the White's state-court complaint. All that plaintiffs have provided is Reale's third-party complaint against the White family's attorney, Michael Burrows. Much of the language of these allegations actually diminishes Reale's involvement in the deal, and emphasizes Burrows's role in advising the family. For example, the pleading alleges that Burrows assisted in the drafting of the contract of sale, and that he reviewed, approved, and advised the Whites on the contract, including the right-of-first-refusal provision, and encouraged them to execute it. (Pls.' Ex. A ¶¶ 11-18.)

As to the second matter that plaintiffs urge the Court to revisit, plaintiffs bring the Court's attention to the following allegations in Reale's third-party complaint:

> 26. Burrows gave legal advice to [the White family] which was contrary to advice given by [Reale].

> 27. Burrows advised plaintiffs to refuse to close pursuant to the Contract of Sale.

(Verified Third-Party Complaint, Pls' Ex. A.)

Plaintiffs claim that these particular allegations directly contradict Reale's prior testimony and "further confirms [plaintiffs'] trickery." (Pls.' Mot. Recon. at 4.) Plaintiffs' suggest that defendants previously used Reale's purportedly false prior testimony to support their position that they were justified in delaying the close of sale because certain "oral agreements" were not contained in the contract, and because the Petrellos allegedly

did not tender the down payment. (*Id.* at 4-5.)  Now, plaintiffs suggest, "for the first time

it is [] alleged that instead of relying on Reale's good advice to close with the Petrellos,

the Whites instead relied on the bad advice of . . . Michael Burrows." (*Id.* at 5.)

However, the Court fails to see how the state court pleading is materially different

from the previous assertions by Reale on this issue.  The Court stated the following in its

2006 summary judgment Order:

> Reale explained to the Whites that "the issues regarding
> Tony Petrello's promise, and his [oral agreements] . . . were
> not in the written agreements. . . . I explained to them that it
> would make it more difficult to enforce. . . . I advised them
> that it would be easier to enforce were it in writing."
> According to Reale, White said that he trusted Petrello and
> that the oral agreements were purposefully omitted from
> the Contract of Sale. The family and Mike Burrows had full
> faith in Mr. Petrello that he would perform that part of his
> agreement [relating to the reconveyance]."

*Petrello v. White*, 412 F. Supp. 2d 215, 228 (E.D.N.Y. 2006) (internal

punctuation, quotes, and citations omitted).

In the state court allegations, Reale alleges that he gave advice contrary to the

advice given by Burrows, and that Burrows also told the Whites to refuse to close the

sale.  It is not clear to the Court what difference it makes whether defendants relied on the

advice of Reale or Burrows in refusing to close on the sale.  The newly discovered facts

proffered by plaintiffs do not appear to have any significant bearing on the colorability of

defendants' assertions.   A conclusion contrary to that made by Judge Tomlinson is

therefore not warranted in light of these facts.

Plaintiffs further argue that the state court pleading "contains numerous new

allegations of secret, unrecorded, and possibly rescinded transactions . . . over which

plaintiffs have rights of refusal." (Pls.' Mot. Recon. at 5.)  Only two of these "numerous"

transactions, however, are identified by plaintiffs. The first involves the purported

transfer of a lot by Mr. White to his wife's Qualified Personal Residence Trust. (*Id.*)

Defendants respond that the transaction was never actually executed, and that until it is,

they have no obligations under the contract to notify plaintiffs. In their reply, plaintiffs

cite to deposition testimony taken in this case back in 2003. (Pls.' Reply at 5.) A review

of the cited testimony reveals that the occasion of this purported transfer was known to

plaintiffs as early as 2003, long before they filed the instant motion for attorney's fees.

Yet, plaintiffs waited until after the matter had been briefed and decided by Judge

Tomlinson to bring the matter to the Court's attention. Raising the issue now under the

rubric of "newly discovered evidence" is not appropriate, and the Court will therefore not

consider the issue.

In the second transaction, defendants allegedly rescinded Mr. White's 2004

transfer of lot three to his daughter Barbara.[4] Plaintiffs claim that this is proof that

defendants have been "concealing" transfers that implicate their right to first refusal.

Defendants respond that no such rescission ever took place, which, they suggest, is why

plaintiffs cannot find a record of it in the county clerk's office. (Defs.' Opp. at 4.)

Plaintiffs counter that the Court should not take the unsworn word of defendants' counsel

over the sworn pleading of Reale. However, plaintiffs own proffer—namely, the

pleading allegations in a separate law suit—fail to pass muster in their own regard. The

allegation in question claims that Burrows "undertook to file a deed rescinding a transfer

of certain real estate from Mr. White to Barbara J. White." (Pls.' Ex. A ¶ 36.) There is no

indication in this allegation of the basis for Reale's knowledge of this event, nor is there

---

[4] Unlike the previously discussed transaction, nothing in the record suggests that this transaction was known to plaintiffs prior to receiving a copy of the state court pleading.

any way for the Court to determine its veracity based on the record before it. The Court will not make a finding of bad faith based solely on such untested allegations. If, as plaintiffs suggest, the allegation pertaining to lot 3 demonstrates defendants' failure to produce relevant discovery documents, then plaintiffs are free to make the appropriate application to Judge Tomlinson to rectify the matter.

### e. Conclusion

The Court adopts both the rationale and conclusions of Judge Tomlinson's well-reasoned and thorough Fees Report and accordingly denies plaintiffs' motion for attorney's fees.

## II.     MOTION FOR RECONSIDERATION

Plaintiffs move herein for reconsideration of the Court's September 30, 2011 Order adopting Judge Tomlinson's Report and Recommendation ("Amendment Report") that plaintiffs' motion to amend the pleadings be granted in part and denied in part. Specifically, Judge Tomlinson recommended that plaintiffs be granted leave to amend to "(1) add a claim for the lost rental value of Lots 5 and 6 in connection with the existing residences on such lots at the time of closing; (2) replace Defendant White Investment Realty, LP with White Investment Limited Partnership; and (3) assert additional supporting facts as to their previously alleged claims, including their specific performance claim pursuant to the alleged right of first refusal as to Lot 1." (Amendment Report at 23-24.)

In their motion for reconsideration, plaintiffs challenge the portion of this Court's Order adopting those recommendations which held that "the planned improvements were too speculative to read liability for [construction] costs into the parties' contracts." (Order Adopting the Amendment Report ("Amendment Order") at 3, docket no. 391.)  Plaintiffs claim that they are entitled to damages in the form of increased construction costs for an 18,000 square foot home to be erected on Lot 5, and for the renovation and enlargement of an existing cottage on Lot 6. (Proposed Second Supplemental and Amended Complaint ¶¶ 37-42, docket no. 375-3.)

The decision to grant or deny a motion for reconsideration lies squarely within the discretion of the district court. *See Devlin v. Transp. Comm'ns Union*, 175 F.3d 121, 132 (2d Cir. 1999).  The standard for a motion for reconsideration "is strict, and reconsideration will generally be denied unless the moving party can point to controlling

decisions or [factual] data that the court overlooked — matters, in other words, that might reasonably be expected to alter the conclusion reached by the court." *Shrader v. CSX Transp., Inc.*, 70 F.3d 255, 257 (2d Cir. 1995); *see also Arum v. Miller*, 304 F. Supp. 2d 344, 347 (E.D.N.Y. 2003) ("To grant such a motion the Court must find that it overlooked matters or controlling decisions which, if considered by the Court, would have mandated a different result.") (citation and internal quotation marks omitted). "The major grounds justifying reconsideration are 'an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice.'" *Virgin Atl. Airways, Ltd. v. Nat'l Mediation Bd.*, 956 F.2d 1245, 1255 (2d Cir. 1992) (quoting 18 C. Wright, A. Miller & E. Cooper, Federal Practice & Procedure § 4478 at 790). Thus, a "'party may not advance new facts, issues, or arguments not previously presented to the Court.'" *Nat'l Union Fire Ins. Co. v. Stroh Cos.*, 265 F.3d 97, 115 (2d Cir. 2001) (quoting *Polsby v. St. Martin's Press*, No. 97 Civ. 690(MBM), 2000 U.S. Dist. LEXIS 596, at *2 (S.D.N.Y. Jan. 18, 2000)).

Plaintiffs argue here that the Court "may have overlooked the fact that the building of a specific house designed for the Petrellos by the architect Francis Fleetwood was, in fact, contemplated within the four corners of the agreement." (Pls' Mot. Recon. at 7.) However, there is no mention of this "fact" anywhere in the contract. Plaintiffs nevertheless argue that the contemplation of these structures was somehow incorporated into the contract at paragraph 31, which conditions the agreement on municipal approval of a proposed subdivision. (Pls.' Mot. Recon. at 8.) Plaintiffs insist that the "entire purpose of the subdivision contingency was to ensure that the property would be usable by the Petrellos for the construction of the specific house designed for them by

Fleetwood." (*Id.*)  No reference of this purported purpose, however, is found in the contract itself.  As Judge Tomlinson originally pointed out in her Report, the contract contained a merger clause.  (Amendment Report at 19 (citing *inter alia Cross Properties v. Brook Realty Co.*, 76 A.D.2d 445, 453 (2d Dep't 1980) ("To the extent that such an agreement [to redevelop] might have been entered into orally by representatives of the parties to the contract of sale, such understanding would be rendered nugatory by the merger clause.")).)  Unrelated exceptions aside, this merger clause prohibits consideration of extrinsic evidence such as the affidavit attached to plaintiffs' motion attesting to the purpose of a certain subdivision map, or plaintiffs' documented application to the Department of Environmental Conservation.  Similarly, the Court also may not consider, despite plaintiffs' urging, defendants' prior statements pursuant to Local Civil Rule 56.1 on the subject.  (Pls' Mot. Amend at 8, docket no. 377 (citing Defendants' 56.1 Statement ¶¶ 177-86, docket no. 208).)  Notably, those statements reflect that defendants did not view the architectural drawings of the proposed dwelling until after the contract had been signed – a testament to the propriety of Judge Tomlinson's conclusion that the planned improvements were "too speculative" at the time the contract was signed to assess liability for construction costs.

Plaintiffs also refer to paragraph 32(B)(q) of the contract which states that the "attached mortgage covers real property principally improved or to be improved by a one or two family dwelling." (Pls.' Mot. Recon. at 9.)  Far from any specific reference to plans for an 18,000 square foot home, this quote again demonstrates that the scale—and by extension, the cost—of the dwelling was largely undefined when the parties signed the contract.

Plaintiffs insist that denying plaintiffs the opportunity "even to plead" construction cost damages goes beyond the law of the New York cases on this issue. This argument is without merit. As stated in Judge Tomlinson's Report, New York courts in fact deny contract delay damages related to increased construction costs "where the contract itself is silent on the issue." (Amendment Report at 18 (citing *Cross Properties*, 76 A.D.2d at 452-55).) The contract here is indeed silent on the matter, and although the parties may have previously discussed the matter of proposed structures to be built on the property, the contract's merger clause forecloses consideration of such discussions. Plaintiffs' proposed amendment would therefore be futile as applied to the relevant New York case law on this topic. Plaintiffs' motion for reconsideration is therefore denied.

Plaintiffs shall file an amended pleading that conforms with the recommendations set forth in Judge Tomlinson's Amendment Report within 21days of the entry of this Order.

## III. CONCLUSION

For the reasons set forth in this Memorandum and Order, the Court adopts Judge Tomlinson's Report and Recommendation regarding the award of attorney's fees (*see* docket no. 382), and denies plaintiffs' underlying motion. The Court further denies plaintiffs' motion for reconsideration, (*see* docket no. 392).


SO ORDERED.

Dated: Central Islip, N.Y.                                      _____/s_____
      July 9, 2012                                      Denis R. Hurley
                                       United States District Judge