UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------X
ANTHONY G. PETRELLO and CYNTHIA
A. PETRELLO,                                                          **MEMORANDUM & ORDER**
                Plaintiffs,                                   01-CV-3082 (DRH)(AKT)

    -against-

JEFFERY G. WHITE, as Co-Executor of the
Estate of John C. White, Jr., THOMAS D. WHITE,
as Co-Executor of the Estate of John C. White, Jr.,
and WHITE INVESTMENT LIMITED
PARTNERSHIP,
                Defendants.
--------------------------------------------------------X

**APPEARANCES:**

**For Plaintiffs:**

NICA B. STRUNK, PLLC
P.O. Box 5087
Southampton, NY 11969
By:    Nica B. Strunk, Esq.

BERG & ANDROPHY
120 West 45th Street
New York, New York 10036
By:    David H. Berg, Esq.

**For Defendants:**

McDERMOTT WILL & EMERY LLP
340 Madison Avenue
New York, New York 10173
By:    Banks Brown, Esq.
         Monica Asher, Esq.
         Daniel N. Jocelyn, Esq.

**HURLEY, Senior District Judge:**

        This long-running controversy centers around an August 25, 1998 contract of sale (the

"Contract") between Plaintiffs Anthony G. Petrello and Cynthia A. Petrello ("Plaintiffs" or

"Petrellos"), as purchasers, and defendant John C. White, Jr. ( "Defendants[1]" or "White"), as seller for 9.56 acres of waterfront property located in Sagaponeck, New York (referred to as lots 4, 5, and 6). Presently before the Court for resolution is Plaintiffs' motion to dismiss "newly" asserted counterclaims and to strike material from Defendants' most recent pleading. For the reasons set forth below, the motion is granted in part and denied in part.

## FORMAT OF DECISION

By way of format, the Court will first briefly describe the current controversy vis a vis the motion to dismiss the counterclaims and the positions of the parties. It will then set forth the background of the case as relevant to the instant application, followed by the governing legal principles. Lastly, those principals will be applied to the present matter. The Court will then turn to the portion of Plaintiffs' motion that seeks to strike certain statements from Defendants' pleading.

## THE CURRENT CONTROVERSY

At issue on the motion to dismiss are two counterclaims raised in Defendants' Amended Answer to Second Supplemental & Amended Complaint & Demand for Jury Trial and Counterclaim, dated September 4, 2012 (the "2012 Amended Answer"), and alleged to be based on the following provision contained in the Contract:

> The following terms and conditions are an integral part of the Contract:
> 1.      All reasonable legal fees in connection with this transaction shall be borne by Buyer, subject to Buyer's reasonable consent to choice of counsel. Buyer shall also pay for all reasonable legal expenses for Seller to obtain a subdivision and conservation easement for all or a portion of the remainder of his Farm Property, subject to Buyer's reasonable consent to choice of counsel.

---

[1] After White's death, the co-executors of his estate were substituted as defendants.

Rider to Contract at ¶ 33(1)[2]. The counterclaims allege that Plaintiffs "have thus far refused to pay all reasonable legal fees incurred to obtain the subdivision," which was "completed in 2000" and "the conservation easement," granted to "the Town of Southhampton on Lot 7" in "2007" as well as those incurred to close the transaction. (2012 Amended Answer (DE 401) ¶¶ 21, 30, 35.) As relief, the first counterclaims seeks "a declaration invalidating the Contract of Sale and ordering the Petrellos to undo the transfer of Lots 4, 5, and 6 and return the lots to Mr. White;" the second counterclaim seeks the alternative relief of compensatory damages. (*Id*. at ¶¶ 40, 44.)

Plaintiffs maintain that the counterclaims are barred by the law of the case and the Second Circuit's mandate affirming this Court's partial judgment which, inter alia, granted specific performance for the sale of lots 4, 5, and 6. Defendants respond that the motion to dismiss should be denied as there has been "no waiver" by White and "no adjudication by this Court (implicit or otherwise) of these claims." (Defs.' Opp. Mem. at 1.) According to Defendants, the fees incurred in the creation of the conservation easement and closing of the transaction were not incurred until 2006-07 and 2010, respectively. (*Id.* at 3.)

Given the nature of Plaintiffs' argument, it is necessary to review the relevant tortured history of this case.

## BACKGROUND

The following background is taken from the various decisions issued by this Court, as well as by the Second Circuit[3] and various materials filed on the docket.

---

[2] Paragraph 33(12) of the Rider to the Contract defines "Farm Property" as "the entire Map of White's subdivision (Lots 1 through 7)" on the attached map.
[3] *See, e.g.*, 412 F. Supp. 2d 215 (2006); 2007 WL 2276300 (Aug. 7, 2007); 2008 WL 5432230 (Dec. 30, 2008); 2009 WL 2346303 (June 9, 2010); 2011 WL 4793172 ( Feb. 23, 2011); 2011 WL 8198105 ( Mar. 03, 2011); 2011 WL 4628689 ( Sep. 30, 2011); 2012 WL 2803759 ( July 10, 2012); 2018 WL 1221131 (Mar. 08, 2018); 533 F.3d 110 (2008); 344 Fed. App'x 651 (2008); 507 Fed. App'x 76 (2013).

Plaintiffs, as purchasers, and White, as seller, entered into a contract for the sale of Lots 4, 5, and 6 on the then-proposed Subdivision Map of John C. White Farm (the "Contract"). Among other things, the Contract provided that it was "subject to the seller obtaining approval" from various entities "for the subdivision of the subject premises substantially in accordance with the Map of White's Subdivision" attached to the Contract. The fully signed Contract, dated "April 1998," was delivered to Plaintiffs on September 4, 1998. After White received a reappraisal of his land, he refused to close.

White's refusal led to Plaintiffs filing of the present action on May 15, 2001, seeking, inter alia, specific performance of the Contract and damages for White's delays in closing. In White's Amended Answer, filed February 7, 2002, he asserted eighteen affirmative defenses and five counterclaims. As pertinent to the issues at hand, one of the affirmative defenses was that the claims for enforcement of the Contract "are barred due to the plaintiffs failure to perform their duties and obligations under the alleged agreement." (DE 33 ¶ 52.) That pleading also included allegations that the Petrellos had stopped paying the bills of both the Peconic Land Trust and the White's attorneys at that time, Twomey, Latham, Shea & Kelley related to work on the subdivision. (*Id.* at ¶ 180.)

In or about December 2004, Plaintiffs filed a motion for summary judgment demanding specific performance of the Contract and dismissing the counterclaims in the February 7, 2002 Amended Answer. In a decision dated February 2, 2006 and reported at 412 F. Supp. 2d 215, this Court, inter alia, granted summary judgment on the Petrellos' claim for specific performance. After granting summary judgment on certain of the counterclaims, the Court turned to the claim for specific performance. In its analysis on that issue, the Court began with the elements that a requesting party must show to obtain that relief: "(1) the making of the contract and its terms,

including a description of the subject matter; (2) that the party is ready, willing, and able to perform the contract and has fulfilled all of his duties to date; (3) that it is within the opposing party's power to perform; and (4) that there is no adequate remedy at law (an element that need not be pled where the contract is for the sale of real property)." *Id*. at 230. As there was no dispute as to the first, third and fourth elements, the Court addressed the second element: "The only question pertains to the second element: Has Petrillo fulfilled all of his duties to date? White argues that the Petrello did not fulfill their duties because they never issued a $355,000 down payment check payable to the escrowee at the time of the signing of the contract in August of 1998." *Id*. at 231. Finding White's contention meritless, the Court granted the Petrellos' motion for partial summary judgment on the claim for specific performance.[4] *Id.*

After a motion by Defendants for reargument was denied, Defendants appealed from the orders granting partial summary judgment for specific performance and denying reconsideration. That appeal was dismissed, however, as the Second Circuit held that the orders were not an appealable final or partial judgment. It further held they were not appealable interlocutory orders relating to an injunction as they lacked specific terms describing in reasonable detail to allow purchasers to ascertain from their four corners, without consulting the contract, precisely what acts were required to be performed at specific dates for transfer of title. *Petrello v. White*, 533 F.3d 110, 114-116 (2d Cir. 2008).

After the appeal was dismissed, this Court directed the parties to submit letters setting forth how to proceed. Defendants raised among other things that were conditions to closing that had not been met, including the payment of attorneys' fees for the conservation easement. (DE 267.) Plaintiffs responded this argument constituted a defense to enforcement of the Contract and

---

[4] As a result of the Court's Order, there were only two remaining claims: Plaintiffs' claim for delay damages and their claim for specific performance of a right of first refusal.

were waived. (DE 268 at 3.) Defendants, on the other hand, took the position that they were not waived as the Petrellos had up to the closing to pay these fees. (DE 271 at 3.) In further letters to the Court, the Petrellos, among other things, proposed a closing within ten days. In response, Defendants argued that such a time frame was not feasible in view of a number of issues that would need to be resolved before the closing, including the issue of payment by the Petrellos of the legal fees in connection with obtaining a conservation easement and requested time to handle that and other issues. (DE 269 at 3-4, n.2.) Plaintiffs' responsive letter did not address this issue but argues that to the extent any issues remain in this litigation, none should delay the appeal of this matter. (*See* DE 270.) By Orders dated December 30, 2008, the Court set forth the terms of the closing of the transaction and directed entry of a partial final judgment. (DE 272, 273.)The (Amended) Order directing entry of judgment provided in pertinent part:

> On the first cause of action of Plaintiffs Anthony G. Petrello and Cynthia A. Petrello for specific performance of the sale of certain real property known as lots 4, 5 and 6 on the subdivision Map of John C. White Farm (recorded in the Office of the Suffolk County Clerk on June 21, 2000 as Map File No. 10454) in favor of Plaintiffs Anthony G. Petrello and Cynthia A. Petrello and against Defendant John C. White Jr. and decreeing that Defendant John C. White Jr. shall perform his obligations under the Contract as herein directed and directing that on April 3, 2009, there shall be held a closing of title for certain real property known as lots 4, 5, and 6 on the subdivision Map of John C. White Farm (recorded in the Office of the Suffolk County Clerk on June 21, 2000 as Map File No. 10454) at the offices of Twomey, Latham , Shea & Kelley, 33 West Second Street, Riverhead, New York, or such other place as mutually agreed upon by the parties, and that at such closing, upon the payment by the Plaintiffs Anthony G. Petrello and Cynthia A. Petrello of the balance of the purchase price, as adjusted in accordance with the terms of the Contract, (a) Defendant John C. White Jr. shall (i) convey to Plaintiffs Anthony G. Petrello and Cynthia A. Petrello by bargain and sale deed with covenants against grantor's acts certain real property known as lots 4, 5 and 6 on the subdivision Map of John C. White Farm (recorded in the Office of the Suffolk County Clerk on June 21, 2000 as Map File No. 10454) which conveyance shall be subject to covenants that lots 5 and 6 shall be owned by a common owner of record and shall not be further divided; (ii) grant Plaintiffs Anthony G. Petrello and Cynthia A. Petrello a right of first refusal, in recordable form, for certain real property known as lots 1, 2, 3, and 7 on the subdivision Map of John C. White Farm (recorded in the Office of the Suffolk County Clerk on

> June 21, 2000 as Map File No. 10454) in accordance with paragraph 33(4) of the Contract; and (b) Plaintiffs Anthony G. Petrello and Cynthia A. Petrello shall (i) grant to Defendant John C. White Jr. a right of first refusal, in recordable form, for certain real property known as lot 4 on the subdivision Map of John C. White Farm (recorded in the Office of the Suffolk County Clerk on June 21, 2000 as Map File No. 10454) in accordance with paragraph 33(5) of the Contract, and (ii) grant Defendant John C. White Jr., in recordable form, a "right of way" for a driveway across the southern portion of Lot 4 so that he may access Lot 7 from Sand Dune Court as a substitute for the elimination of the existing access to the "camps" on lot 7, as provided for in paragraph 33(12) of the Contract; and (c) Plaintiffs Anthony G. Petrello and Cynthia A. Petrello and Defendant John C. White Jr. shall complete, acknowledge and deliver such other documents as necessary to close title pursuant to the Contract, including any tax forms required to record the aforementioned documents, and documents deemed necessary by a title insurance company, qualified in New York, to transfer insurable title to lots 4, 5 and 6 as agreed to by the parties or as ordered by the Court as a result of the pre-closing; and
>
> IT IS FURTHER ORDERED that parties shall hold a pre-closing on March 6, 2009 at 11:00 a.m. at the offices of Twomey, Latham, Shea & Kelley, 33 West Second Street, Riverhead, New York, or such earlier date (or such other place) as mutually agreed upon by the parties in writing. At said pre-closing, the precise language of each of the documents required for the closing of title in accordance with the contract, as well as adjustments to the purchase price, shall be addressed by the parties. In the event there remain any open items or disagreements at the conclusion of the pre-closing, the parties shall so advise the Court by letters filed no later than the close of business on March 10, 2009. Said letters shall detail the nature of the disputed item(s) and the parties' position with respect thereto. A hearing on said disputed item(s) shall be held on March 27, 2009 at 10 a.m.

(DE 275.) The Memorandum directing the entry of a partial final judgment did not address the issue of fees under paragraph 33(1). *See* DE 272

A pre-closing was held and both parties submitted letters to address the open issues. The fees referenced in paragraph 33(1) were addressed by both parties. Plaintiffs took the position that they already paid White for a conservation easement and fulfilled their obligation in that regard and "cannot possibly be held to pay over $590,000 for legal services incurred after the commencement of this action, which they were never advised were being incurred and for counsel whom they certainly never approved as required by the Contract of Sale." (DE 280 at 2-

5.) With regard to Defendants' claim for attorneys' fees for the Court-Ordered closing, Plaintiffs argued that they paid the attorney's fees up to when White refused to close and Defendants alone are responsible for whatever additional fees they have incurred as a result of the position that they have taken which led to this litigation . . . ." (*Id*. at 5.) Defendants argued that Plaintiffs' counsel was fully aware that counsel had been retained to assist in obtaining a conservation easement for certain of Defendants' property and never objected and that under the contract Plaintiffs were obligated as a condition to closing to pay all reasonable attorney's fees in obtaining the conservation easements and the attorney's fees incurred in closing this transaction. (DE 281 at 2-3.) Before the Court could address the issues raise in the parties' letters, the Second Circuit granted a stay pending appeal.

On August 26, 2009, the Second Circuit affirmed the partial final judgment granting the Petrellos summary judgment on their claim of specific performance. According to Plaintiffs, White never argued on appeal "the partial final judgment should have required the Petrellos to pay additional attorneys' fees at closing [or] that the Petrellos breached the Contract by failing to pay their subdivision, closing or conservation easement expenses." (Pls.' Mem. at 12.)

A hearing was held on October 29, 2009. At that hearing, White took the position that the issues of attorney's fees due under paragraph 33(1) could be held in abeyance as it would not affect the closing. Plaintiffs took the position that the Court had already decided the issue in its February 2, 2006 Memorandum & Order when it found that the Petrellos "fulfilled all of [their] duties to date." In addition, the Petrellos took the position that a conservation easement was put on the land in June 2000 and they were not responsible for an additional new conservation easement that was put on another property in 2006 and 2007. After listening to counsel, the Court stated that in view of the fact that the end goal is to close, its "preliminary thought is that

that is exactly what should happen and that [the Court] should address this probably after closing." Both sides indicated that was satisfactory, although Plaintiffs asked that the matter be resolved rather quickly. (Oct. 29, 2009 Tr. at 6-19.)

In the ensuing period after the October 29, 2009 conference, the Court dealt with a number of issues that needed to be resolved in connection with the closing, including disputes over the language in the closing documents. The closing directed by the Court's partial judgment finally took place in or about July 8, 2010, with the issue of the paragraph 33(1) fees unresolved by the Court.

Thereafter, Plaintiffs sought leave to file a Second Supplemental and Amended Complaint, which motion was resolved by Orders dated September 30, 2011 and July 10, 2012 which granted the motion only in part and denied reconsideration, respectively. (DE 391, 397.) A "Second Supplemental and Amended Complaint" was filed on July 31, 2012. (DE 398.) Defendants filed an Amended Answer on September 4, 2012 asserting the counterclaims at issue. (DE 402.) The instant motion to dismiss and to strike was filed on January 30, 2013. DE 406.)

Having been advised by the parties that they were actively negotiating the settlement of this case, by Order dated September 30, 2013, the Court closed the case with leave to reopen in the event the parties failed to reach a settlement.

Nearly three years later, on July 5, 2016, Defendants filed a request that the case be reopened and a conference be scheduled "as the parties reached an impasse and have failed to reach a settlement." (DE 421.)

A conference was held at which a schedule for the filing of cross-motions for summary judgment on the claim relating to the right of first refusal on "lot 1" was established. That schedule was thereafter suspended while the parties pursued mediation. When mediation proved

unsuccessful, briefing resumed. Those motions were decided by Order dated March 30, 2018, after which a conference was scheduled. In advance of the conference the parties were directed to identify the issues that remain; Plaintiffs' letter reminded the Court that the instant motion had yet to be resolved.

## DISCUSSION

**I.      Legal Standard for a Motion to Dismiss**

In deciding a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) for failure to state a cause of action, a court should "draw all reasonable inferences in [the pleading party's] favor, assume all well-pleaded factual allegations to be true, and determine whether they plausibly give rise to an entitlement to relief." *Faber v. Metro. Life Ins. Co.*, 648 F.3d 98, 104 (2d Cir. 2011) (internal quotation marks omitted). The plausibility standard is guided by two principles. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007)); *accord Harris v. Mills*, 572 F.3d 66, 71–72 (2d Cir. 2009).

First, the principle that a court must accept all allegations as true is inapplicable to legal conclusions. Thus, "threadbare recitals of the elements of a cause of action supported by mere conclusory statements, do not suffice." *Iqbal,* 556 U.S. at 678. Although "legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." Id. at 679. The party asserting the claim must provide facts sufficient to allow the charged parties to have a fair understanding of what is being complained about and to know whether there is a legal basis for recovery. *See Twombly*, 550 U.S. at 555.

Second, only complaints that state a "plausible claim for relief" can survive a motion to dismiss. *Iqbal*, 556 U.S. at 679. "A claim has facial plausibility when [the party asserting the claim] pleads factual content that allows the court to draw the reasonable inference that [the

opposing party] is liable for the misconduct alleged. The plausibility standard is not akin to a 'probability requirement,' but asks for more than a sheer possibility that [the charged party] acted unlawfully. Where a pleading pleads facts that are 'merely consistent with' a party's liability, it 'stops short of the line' between possibility and plausibility of 'entitlement to relief.' " *Id*. at 678 (quoting *Twombly*, 550 U.S. at 556-57) (internal citations omitted); *see In re Elevator Antitrust Litig*., 502 F.3d 47, 50 (2d Cir. 2007). Determining whether a pleading plausibly states a claim for relief is "a context specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679; *accord Harris*, 572 F.3d at 72.

"In adjudicating a Rule 12(b)(6) motion, a district court must confine its consideration 'to facts stated on the face of the [pleading], in documents appended to the complaint or incorporated in the complaint by reference, and to matters of which judicial notice may be taken.'" *Leonard F. v. Israel Disc. Bank of New York*, 199 F.3d 99, 107 (2d Cir. 1999) (quoting *Allen v. WestPoint–Pepperell, Inc*., 945 F.2d 40, 44 (2d Cir. 1991)); *see Weiss v. Village of Sag Harbor*, 762 F. Supp. 560, 567 (E.D.N.Y. 2011) (in deciding a motion to dismiss a court is entitled to consider, inter alia, "documents 'integral' to the complaint and relied upon in it, even if not attached or incorporated by reference" and "documents or information contained in defendant's motion papers if plaintiff has knowledge or possession of the material and relied on it in framing the complaint").

## II. Law of the Case and Mandate Rule Generally

The law of the case doctrine "posits that when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages of the same case." *Arizona Premium Fin. Co. v. Employers Ins. of Wausau, of Wausau Am Mut. Co*., 586 Fed.Appx. 713, 716 (2d Cir. 2014) (quoting *Arizona v. California*, 460 U.S. 605, 618 (1983) ). One prong

of the law of the case doctrine is the mandate rule. *Brown v. City of Syracuse*, 673 F.3d 141 147 (2d Cir. 2012). Under the mandate rule, "'when an appellate court has once decided an issue, the trial court, at a later stage of the litigation, is under a duty to follow the appellate court's ruling on that issue.' This 'mandate rule prevents re-litigation in the district court not only of matters expressly decided by the appellate court, but also precludes re-litigation of issues impliedly resolved by the appellate court's mandate.'" *Id*. (quoting *Doe v. N.Y. City Dep't of Soc. Servs.*, 709 F.2d 782, 788 (2d Cir.1983) and *Yick Man Mui v. United States*, 614 F.3d 50, 53 (2d Cir.2010)) *accord Call Center Tech., Inc. v. Interline Travel & Tour Inc.*, 622 F. App'x 73, 74 (2d Cir. 2015) ("Ordinarily, the law of the case forecloses relitigation of issues . . . impliedly decided by the appellate court.") (internal quotation marks omitted). "Where an issue would have been ripe for review on an initial appeal but was not raised, the issue is considered waived and the law of the case doctrine bars the district court on remand and an appellate court in a subsequent appeal from reopening such issues 'unless the mandate can reasonably be understood as permitting it to do so. However, the issue will not be considered waived unless a party had both an opportunity and an incentive to raise it . . . on appeal." *Id*. at 74-75 (internal quotations marks and citations omitted).

III.    **Application to the Present Case**

Although each of counterclaims seeks to recover all three of the different types of attorney's fees referenced in paragraph 33(1), the Court believes that a proper analysis requires that the claim for fees in connection with the subdivision should be analyzed separately. The claims for fees relating to the conservation easement and the closing of the transaction will be addressed together.

A.    **Legal Fees for the Subdivision of the White Family Farm.**

In applying the law of the case doctrine to the claim for fees relating to the subdivision, it is important to note that the counterclaims state that in the year 2000 the subdivision was completed and the subdivision map filed. The motion for summary judgment was submitted to the Court in December 2004, more than three years after the subdivision was completed. Yet at no point in their submission on that motion did Defendants raise non-payment of the fees relating thereto. As noted earlier, with respect to the claim for specific performance the only "non-performance" claimed by Defendants up to that date was the alleged non-payment of the down payment. Indeed, given that payment of the fees for the subdivision approval were an "integral part" of the Contract (*see* Contract (Plaintiffs' Ex. M) at ¶ 33), if there was an outstanding balance due with respect to those fees, the nonpayment should have been raised as part of the issue of whether Plaintiffs had performed all their obligation up to that date. It was not, even though it was asserted as an affirmative defense. Having failed to raise this issue on the motion for summary judgment (or before the Second Circuit), the law of the case doctrine precludes this aspect of Defendants' counterclaims.

### B. Fees For the Conservation Easement and Closing of the Transaction

As to the claim for the fees for the closing of the transaction, it seems logical that said payment would not be due until the closing of title. Similarly, according to the counterclaim, the fees sought for the conservation easement relate to an easement on lot 7 that was granted in 2007, three years after the summary judgment motion was framed. Thus, the Court is underwhelmed by the argument that the nonpayment of these fees should have been raised on the motion for summary judgment. The question then becomes whether the claim for these fees was addressed in the Court's December 30, 2008 Order and the accompanying Partial Final Judgment.

Plaintiffs' argument is that the final judgment directed the payment of the balance of the purchase price, "as adjusted in accordance with the terms of the Contract" and that these fees are not an "adjustment" given that the term adjustment "is a specific one used in paragraph 18 of the Contract." (Pls.' Mem at 11.) Paragraph 18 of the contract is entitled "Apportionments and Other Adjustments; Water Meter and Installment Adjustments." It provides for certain items such as taxes, water and sewer to be "apportioned" and sets forth how they are to be "apportioned." It further provides that "[a]ny errors or omissions in computing apportionments or *other adjustments* at Closing shall be corrected within a reasonable time following the closing." Contract at ¶ 18 (emphasis added). A plain reading of the entirety of paragraph 18 leads to the conclusion that adjustments was not limited to taxes, water and sewer. Nor did the Court intend to limit it to such, given Defendants' references in the letters submitted to the Court regarding the amount of fees allegedly due by Plaintiffs. That the parties also understood that the fees at issue were part of the closing adjustments is evidenced by the fees being addressed as part of the pre-closing process ordered by the Court.

The Court directed that at the pre-closing the parties were to address "adjustments to the purchase price." (Order dated Dec. 30, 2008). In the letter filed with the Court after the pre-closing, the issues of fees for the conservation easement and for the closing were raised by the parties; thus it would appear that at that time the parties' understanding was that these items were considered part of the adjustments to be made at closing.

Before the items raised at the pre-closing, including the alleged fees for the closing and the conservation easement, could be addressed, the Second Circuit issued the stay pending appeal. As the issue of Plaintiffs' alleged obligation to pay for the fees incurred by Defendants for the lot 7 conservation easement and closing of title remained open, the Second Circuit's

mandate affirming this Court's specific performance judgment does not preclude the claim that Defendants are entitled to recover these fees.

Having said that, this Court does hold, however, that any assertion that the relief for the alleged failure to pay these fees is the undoing of the transfer is barred. Even if not barred by the mandate rule, which it arguably is, it was waived given Defendants' position after the appeal that the issue of these fees could be held in abeyance as they would not affect the closing ,and their agreement with the Court's suggestion that a ruling on them be deferred. Having failed to raise the specter that non-payment at closing would require that the transactions be undone, Defendants may not raise it now.

### IV. The Motion to Strike is Granted

#### A. Applicable Standard

Rule 12(f) of the Federal Rules of Civil Procedure provides: "The court may strike from a pleading an insufficient defense ot any redundant, immaterial, impertinent or scandalous matter." Fed. R. Civ. P. 12(f). While the Second Circuit has cautioned that "courts should not tamper with the pleadings unless there is strong reason for doing do," *Lipsky v. Commonwealth United Corp.* 551 F.2d 887, 893 (2d Cir. 1976), "allegations may be stricken if they have no real bearing on the case, will likely prejudice the movant, or where they have criminal overtones." *G-I Holdings, Inc. v. Baron v. Budd*, 238 F. Supp.2d 521, 555 (S.D.N.Y. 2002); *see also Prout v. Vladeck*, -- F.R.D. --, 2018 WL 3853990 (S.D.N.Y. Aug. 14, 2018).

Plaintiffs' motion to strike is addressed to the following underlined portions of paragraph 2 of the 2012 Amended Answer:

> Upon information and belief, . . . Defendant Anthony G. Petrello is a <u>multi-millionaire</u> oil executive and is a resident and domiciliary of Houston, Texas . . . . <u>Upon information and belief, Mr. Petrello has received some publicity recently related to another action he commenced against another neighbor seeking to</u>

> compel that neighbor to sell Mr. Petrello his home. Mr. Petrello's claim was denied. Recent articles on the action are attached hereto as Exhibit A and the decision of the United States Court of Appeals for the Fifth Circuit is attached as Exhibit B.

(2012 Amended Answer ¶ 2.)

The allegations regarding Anthony Petrello's personal wealth and unrelated litigation have no bearing on the material issues in this case and could influence prospective jury members and therefor it is appropriate to strike the underlined portions and the referenced exhibits. *See,* Prout, 2018 WL 3853990, *4 (striking paragraph that served no purpose other than to inflame the reader and "gin up resentment . . . on the part of a potential jury.") (quoting *Low v.* Robb, 2012 WL 173472, at *10 (S.D.N.Y. Jan. 20, 2012).) The motion to strike is granted in its entirety.

## CONCLUSION

For the reasons set forth above, the motion to dismiss Defendants' counterclaims is granted as to the first counterclaim and granted on that portion of the second counterclaim that seeks fees incurred in connection with the subdivision approval but is otherwise denied.[5] The motion to strike is granted.

**SO ORDERED.**

Dated: Central Islip, New York       s/ Denis R. Hurley
        September 11, 2018             Denis R. Hurley
                                              United States District Judge

---

[5] This opinion addresses only the issue of law of the case vis a vis the fees sought in the counterclaims and should not be read to express any opinion of the merits of the counterclaim for payment of the fees for the conservation easement on lot 7 and for the closing.